(December 4, 1902.)

## BEELER v. C. C. MERCANTILE COMPANY.
### [70 Pac. 943.]

CHATTEL MORTGAGE—REAL ESTATE.—A hotel building, affixed to land, and held and conveyed with the land upon which it stands as real estate, cannot thereafter, by mere agreement of the parties, become a chattel or personal property and legally encumbered by a chattel mortgage, until after its severance from the land.

LIEN—CHATTEL MORTGAGE—REAL ESTATE.—A chattel mortgage on real estate creates no lien thereon, as the provisions of section 3385 of the Revised Statutes, as amended, are a prohibition against mortgaging real estate by chattel mortgage.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

Charles L. Heitman, for Appellant.

A house or other building, which, from its size, or the materials of which it was constructed, or the manner in which it was affixed to the land, could not be removed without practically destroying it, would not, I conceive, become a mere chattel by means of any agreement which could be made concerning it." (*Ford v. Cobb,* 20 N. Y. 344; *Hoyle v. Railroad Co.,* 54 N. Y. 315, 13 Am. Rep. 595.) In the case at bar there was no severance of the hotel building from the lots of land upon which it was situated. (*Lyle v. Palmer,* 42 Mich. 314, 3 N. W. 921; *Docking v. Frazell,* 34 Kan. 29, 7 Pac. 618.) In the case at bar the International Hotel had already been built and used and occupied as real estate a long time before the execution of the chattel mortgage in controversy by Beeler to the C. C. Mercantile Company. It had been treated as real estate by the prior owners of the property. It had been treated as such

and mortgages had been taken upon it as such by the C. C. Mercantile Company, respondent herein. (*Pine v. Coke,* 71 N. C. 97.)    The execution of a chattel mortgage on fixtures does not create a severance.    (*Rogers v. Copeland,* 6 Gray, 536, 66 Am. Dec. 424; *Docking v. Frazell,* 34 Kan. 720, 7 Pac. 618; *Horne v. Smith,* 105 N. C. 322, 18 Am. St. Rep. 905, 11 S. E. 373; *Voorhees v. McGinnis,* 48 N. Y. 497, 8 Am. Rep. 564; *Lavenson v. Soap Co.,* 80 Cal. 245, 22 Pac. 184, 13 Am. St. Rep. 147, and note; *McNally v. Connolly,* 70 Cal. 3, 11 Pac. 320; *Gray v. Holdship,* 17 Serg. & R. 413, 17 Am. Dec. 680; *Roseville Alta Mining Co. v. Mining Co.,* 15 Colo. 29, 22 Am. St. Rep. 373, 24 Pac. 920; *Hull v. Hull,* 1 Idaho, 361; *Hyatt v. Vincennes Bank,* 113 U. S. 416, 5 Sup. Ct. Rep. 573; *Knapp v. Jones,* 143 Ill. 375, 32 N. E. 382; *Gray v. Holdship,* 17 Serg. & R. 413, 17 Am. Dec. 686.)    The right of redemption is a substantial right.    Our statute securing this right of redemption is a binding rule of property and cannot be nullified by an agreement of the parties.    (*Brine v. Insurance Co.,* 96 U. S. 627.)    "The mortgagor is not allowed to renounce beforehand his privilege of redemption.    Generally, everyone may renounce any privilege or surrender any right he has, but an exception is made in favor of debtors who have mortgaged their property."    (1 Jones on Mortgages, sec. 251; 3 Pomeroy's Equity Jurisprudence, sec. 1180.)

John B. Goode, for Respondent.

We think that the weight of authority sustains the doctrine that fixtures may become chattels by agreement of parties as between themselves.    In Jones on Chattel Mortgages, page 124, it is said by that learned author, and generally accepted authority on this subject, that "many things ordinarily considered fixtures to the realty may become to all intents and purposes personal property, by agreement of all parties interested in both the realty and the fixtures," and cites in support of his text: *Smith v. Waggoner,* 50 Wis. 155, 6 N. W. 568; *Ford v. Cobb,* 20 N. Y. 344; *Godard v. Gould,* 14 Barb. 662; *Shell v. Hayword,* 16 Pa. St. 523; Ewell on Fixtures, 68; citing *Fortman*

*v. Goepper,* 14 Ohio St. 558; *Sheldon v. Edwards,* 35 N. Y. 283; *Voorhees v. McGinnis,* 48 N. Y. 278; *Eaves v. Estis,* 10 Kan. 314; *Tifft v. Horton,* 53 N. Y. 377, 13 Am. Rep. 537. "The clear tendency of modern authority seems to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and other tests seem to derive their chief value as evidence of such intention." (Ewell on Fixtures, 22; *McDonald v. Shepherd,* 25 Kan. 112; *Hinkley & Egery Iron Co. v. Black,* 70 Me. 473, 35 Am. Rep. 346; *Morris v. French,* 106 Mass. 326; *Yater v. Mellen,* 24 Ind. 277.) We believe that the doctrine is established that whether or not the buildings placed upon real estate become real estate or not, is governed by the manner in which they are placed thereon, the use or purpose of the buildings in connection with the real estate; but principally the intention of the owner. In support of this belief that this is settled law, we beg leave to call the court's attention, in addition to authorities already cited, to the following: *German Sav. etc. Soc. v. Weber,* 16 Wash. 95, 47 Pac. 224; *Holt County Bank v. Tootle,* 25 Neb. 408, 41 N. W. 291; *Bartholomew v. Hamilton,* 105 Mass. 239; *Sowden v. Craig,* 26 Iowa, 156, 96 Am. Dec. 125; *Traders' Nat. Bank v. First Nat. Bank of Kerwin,* 6 Kan. App. 400, 50 Pac. 1098; *Deering v. Ladd,* 22 Fed. 575; *Teaff v. Hewitt,* 1 Ohio St. 511, 59 Am. Dec. 655, 656; *Harkey v. Cain,* 69 Tex. 146-150, 6 S. W. 637; 13 Am. & Eng. Ency. of Law, 623 et seq., and notes, 668, 669.

SULLIVAN, J.—This action was brought to enjoin the sheriff of Kootenai county from foreclosing a chattel mortgage on a hotel building situated in Bonner's Ferry, under the provisions of sections 3390-3393 of the Revised Statutes, by notice and sale, and to have said chattel mortgage declared null and void. The facts are substantially as follows: On April 11, 1900, Joseph P. Beeler executed to the C. C. Mercantile Company, Limited, five promissory notes amounting in the aggregate to $900, and to secure the payment of the same executed said chattel mortgage on the hotel building known as the "International Hotel," situated on lots 1, 2, 3, and 4, in block 5, first addition to Bonner's Ferry, Kootenai county. Said hotel building is

referred to as personal property in said mortgage. Said Beeler thereafter died, and Bridget E. Beeler was appointed administratrix of his estate, and commenced this suit as such administratrix. On April 11, 1901, the respondent corporation began proceedings to foreclose said chattel mortgage by the sheriff, under the provisions of the above-cited sections of the Revised Statutes, and this action was commenced for the purpose above stated, and resulted in a judgment in favor of the respondent corporation. The pleadings are of considerable length, but the main issue is as to whether said hotel building is personal p·operty or real estate. There is no substantial conflict in the evidence. The evidence shows that said hotel building is a large, substantial, two-story frame building, consisting of twenty or more rooms. A part of it had been removed to said lots, and a part built thereon by the predecessors of Beeler. It also appears that said lots of land, together with the hotel building, had for some time prior to the date of said chattel mortgage been owned, conveyed, occupied, and used by the grantors of Beeler as real estate, and on April 11, 1900, said grantors, by warranty deed, conveyed said hotel building, together with said lots of real estate, to said Beeler, and he used, held, and occupied it as real estate during his lifetime. It also appears that Lucas, Markle, and Gray, grantors of said Beeler, had encumbered said real estate by giving a real estate mortgage thereon to the respondent corporation, and that said lots and hotel building were treated as real estate by it. It also appears that said Beeler sold and conveyed to the respondent the east half of said lots, with the agreement and understanding that he could remove said hotel building from said lots; that he undertook to remove a part of it—the kitchen—but was prevented from doing so by an adjoining property owner, and then moved it back again. It also appears that said chattel mortgage is dated April 11, 1900, and the deed from Beeler conveying the east half of said lots to the respondent was dated April 12, 1900; that, although the two instruments bear different dates, they were the culmination of a single agreement, by which Beeler had the right to remove said building. It ap-

pears that it was discussed between the parties as to what kind of a mortgage Beeler should give on the hotel building to protect the respondent, and it was finally decided that it should be a chattel mortgage, and it was given. It is thus made to appear that it was the intention and agreement of the parties that said hotel building should be considered to be personal property. It is also shown that the estate of said decedent is insolvent.

The main contention is as to whether said hotel building, under those facts, is real estate or personal property. It is contended by counsel for respondent that it is personal property, for the reason that at the time Beeler became the owner of it and the lots on which it stood he elected, for his own convenience, to treat the hotel building as a chattel, and to mortgage it as such, so that he might remove it from the lots, the east half of which he conveyed at the same time to another party; and that, having elected, at the very inception of his ownership, to treat it as a chattel, it became one; and that he might, under the law, place a valid chattel mortgage upon it. In support of that contention counsel cites Jones on Chattel Mortgages, section 124, and authorities there cited, and Ewell on Fixtures, page 68, and authorities there cited. The former authority holds that fixtures may become chattels by agreement of parties as between themselves, and it is conceded that the ordinary distinction between real estate and chattels exists in the nature of the subject, and cannot, in general, be changed by the convention or agreement of the parties. Mr. Ewell, after discussing the rule contended for by counsel, and citing authorities for and against it, says, on page 69, as follows: "The better reason and the weight of authority is that such agreement [to change real estate to personal property] or understanding, express or implied, must have existence prior to the annexation of the chattel to the land; and that, if the thing is annexed by a stranger, without the prior consent of the owner of the land, or any contract with him, express or implied, it cannot afterward become personal property by the mere oral assent of the land owner, without a severance from

the land." In the case at bar the grantors of Joseph P. Beeler sold and conveyed to him by warranty deed said hotel building and the lots upon which it stood. They sold it as real estate, and Beeler bought it as real estate, and the building had not been severed from the land at the time said chattel mortgage was given or when this action was tried. In *Burk v. Hollis,* 98 Mass. 55, it is held that where a house, built on the land of another as personalty, was by him conveyed to the owner of the land, it at once becomes real estate, and the owner of the land cannot, by executing a chattel mortgage to secure part of the purchase money, sever and convey as personal estate any interest in it, merely by treating it as personal estate in the instrument of conveyance. Counsel for respondent relies to some extent upon *Docking v. Frazell,* 38 Kan. 420, 17 Pac. 160. That is a case from Kansas, and was twice appealed to the supreme court of that state. (See *Docking v. Frazell,* 34 Kan. 29, 7 Pac. 618.) On the first appeal the building in controversy was presumed to be real estate. Upon a retrial, after a reversal of the case, more testimony was introduced than at the original trial, and it was clearly shown that said building was moved onto leased lots, and by the terms of the written lease the lessee was required to remove the building placed thereon at the termination of the lease. And on the second appeal it was held that said building was personal property, and that a chattel mortgage given thereon was valid. Many of the authorities cited relate and apply to trade fixtures placed on leased premises with an agreement and understanding that they might be removed at the termination of the lease, and are not applicable to the facts of the case at bar. There is a clear distinction between that case and the one at bar. In the latter case the hotel building was erected on real estate owned by the persons who caused the hotel to be placed there, and had not been removed therefrom at the time said chattel mortgage was executed, and falls within the rule above quoted from Ewell on Fixtures to the effect that real estate fixtures cannot become personal property by the assent of the land owner without its severance from the land. Section 2825 of the Revised Stat-

utes defines the term "real estate" as follows: "Real property or real estate consists of: 1. Lands, possessory rights to land, ditch and water rights, and mining claims, both lode and placer; 2. That which is affixed to land; 3. That which is appurtenant to land." Said hotel building was affixed to and appurtenant to said lots of land at the time the chattel mortgage was given, and had prior to that date or on that date been transferred by warranty deed as real estate, and clearly was, under the terms of said section of the statute, real estate.

Section 3385 of the Revised Statutes, as amended (see Acts 1899, p. 292), prescribes upon what property a chattel mortgage may be given, and is as follows: "Chattel mortgages may be made upon all property, goods or chattels, not defined by statute to be real estate, upon growing crops, and upon crops to be sown and grown in the future; but, should the persons executing mortgages upon crops, to be afterward sown, fail to sow or cause the same to be sown, no lien of such mortgages shall attach to crops sown by other persons upon the lands described in said mortgages, except in so far as the mortgagors in said mortgages have or retain interests in said crops." The provisions of that section limit chattel mortgages to property other than real estate and upon crops. Therefore a valid chattel mortgage cannot be given upon property other than that there prescribed; and there is good reason for this rule, as the registry law requires (Acts 1899, p. 121) chattel mortgages to be filed with the county recorder, and kept there, and certain facts contained in the mortgage must be entered in a record kept for that purpose; while a real estate mortgage must be filed by the recorder and recorded at length in a record provided for that purpose. They are recorded in different books, and a real estate mortgage registered as a chattel mortgage, *vice versa,* would not be a legal registry or recording. The provisions of said section are a prohibition against mortgaging real estate by chattel mortgage.

After defining real estate and personal property, our statute prescribes the method and manner of encumbering and transferring each class, and it is not in the power of parties to waive

or alter, by their agreement, any of these regulations. In *Hoyle v. Railroad Co.*, 54 N. Y. 315, 13 Am. Rep. 595, the court, in referring to rules established by statute for the transfer of property, said: "These regulations have been adopted with regard not only to the interests of the parties immediately concerned, but also with regard to the interest of others in ascertaining the ownership of property." (Also, see *Richardson v. Copeland,* 6 Gray, 536, 66 Am. Dec. 424.) We think, under our statutes and the facts of this case, that the hotel building in controversy was real estate, and that said chattel mortgage created no lien upon it, and is therefore void. That being true, it is not necessary for us to pass upon the other errors assigned.

The judgment must be reversed, and the cause remanded, with instructions to enter judgment in favor of the appellant as prayed for in the complaint. Costs are awarded to appellant.

Quarles, C. J., and Stockslager, J., concur.