CASE 43.—ACTION BY LOUISA K. THOMAS AGAINST J. W. GAYLE & CO.—June 18, 1909.

# Thomas v. J. W. Gayle & Co.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for defendants, plaintiff appeals.—Affirmed.

Fixtures—Landlord and Tenant—Abandonment—New Lease.— Moveable trade fixtures owned by a tenant, in connection with a store, are not abandoned to the landlord by the tenant accepting a new lease, containing no reservation of a right to remove the fixtures at the end of the term, or mention of any claim thereto.

LINDSAY & EDELEN, J. H. POLSGROVE and J. A. VIOLETT for appellant.

Our contention is "that the right to remove trade fixtures is waived by taking a new lease after the expiration of that under which they were added to the premises. The lease being silent as to the fixtures and binding on the tenant to deliver the premises in as good condition as when received. There are but few judicial dissents from this rule, though they are by courts of higher standing." Sutherland on damages, 3d edition, vol. 3, sec. 875. See also Woods' Landlord & Tenant, section 532; Woodfall's Landlord & Tenant, sec. 621; Tyler on Fixtures, sections 437 and 439; Tiffanily on Real Property, sections 239-240; Kinderman (3d edition) 18-23.

GREENE & VANWINKLE and SCHOOLFIELD and B. G. WILLIAMS for appellee.

Thomas v. J  W. Gayle & Co.

POINTS AND AUTHORITIES.

A tenant does not forfeit title to "Trade Fixtures" placed by him in a landlord's building by taking, before the expiration of the old, a new lease of the premises without expressly reserving the right to remove his fixtures.    Kerr. v. Kingsbury, 39 Mich. 153; Devin v. Dougherty, 27 How. Pr. 455; Radey v. McCurdy, (Penn.) 67 L. R. A. 357; Burgh v. Herrin-Hall-Marvin Safe Co., 136 Fed. 369; Lewis v. Pier Co., 125 N. Y. 530; Smusch v. Klohn, 49 N. Y. Supp. 176; Bernheimer v. Adams, 75 N. Y. Supp. 99, 175 N. Y. ——; McCarty v. Trumacher, 108 Ia. 284, 78 N. W. 1104; Wright v. McDonald, 88 Tex. 140, 30 S. W. 907; Ross v. Campbell, 8 Col. App. 38, 47 Pac. 465.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellant, Louisa K. Thomas, is the owner of a certain house and lot on the north side of Main street, in Frankfort, Ky., known as the "Chiles Drug Store." Appellees, J. W. Gayle and B. Ebner, partners doing business under the firm name of "J. W. Gayle & Co.," occupied said premises as a drug store under a lease which expired January 1, 1907. Before the expiration of their lease, they vacated the building and took with them certain trade fixtures, consisting of counters, prescription cases, shelving, etc. Appellant, claiming to be the owner of the fixtures, brought this action to recover the value thereof and damages for the injury done to her freehold. Appellees defended on the ground that they were the owners of the fixtures, and denied that they had in any way damaged the building. They also filed a counterclaim for damages to their goods, alleged to have been caused by the failure of appellant to keep the building in reasonable repair. The jury returned a verdict in favor of appellees. From that judgment based thereon, this appeal is prosecuted.

The facts are as follows: In 1873 one Chiles owned the building referred to. His son, Richard Chiles, bought and placed in the building certain drug store fixtures, consisting of counters, shelving, prescription cases, etc., for the purpose of conducting a drug store therein. The father died, and devised the building to his wife, Unetta Chiles, who died in 1901, and devised the building to appellant. Richard Chiles conducted a drug store in the building from 1873 until his death. Upon his death the fixtures were appraised as a portion of his estate and were sold by his administratrix and widow, Sallie Chiles, to Wickliffe Chapman, for $550. Prior to 1891 Chapman leased the building from Mrs. Unetta Chiles and conducted a drug store therein. John W. R. Williams bought a two-fifths interest in the store and fixtures from Chapman about the year 1891, and he and Chapman continued to conduct the business as partners until Chapman's death in 1892. Upon Chapman's death, his three-fifths interest in the drug store and fixtures was sold by his administrator, Walter Chapman, to John W. R. Williams, in the year 1893. The lease to Chapman expired January 1, 1892. A new lease was made to Williams for a period of five years, beginning January 1, 1892, and ending January 1, 1897. In the year 1896 and during the pendency of this lease, the building caught fire, and the fixtures were practically destroyed. Mrs. Chiles carried insurance on the building, which she collected after the fire. Williams carried insurance on the stock and fixtures, which he likewise collected. Thereafter Williams bought new fixtures and paid for same. In 1896 Mrs. Chiles executed another lease to Williams, which began January 1, 1897, and ended January 1, 1902. In 1901

Williams sold his drugs and trade fixtures to South-
Longmoor & Co.  In June, 1901 Mrs. Chiles made a
new lease of the building to South-Longmoor & Co.
for a period of five years, beginning January 1, 1902,
and ending January 1, 1907.  In February, 1903,
South-Longmoor & Co. sold the trade fixtures to ap-
pellee, J. W. Gayle & Co., and with the consent of ap-
pellant assigned the lease on the building to appel-
lees.  For these fixtures appellees paid $2,100.  In
December, 1906, appellees leased another building
and removed thereto their stock of drugs and the
counters, prescription cases, shelving, soda fountain,
etc., which they had purchased from South-Longmoor
& Co.  It is the value of these fixtures which appel-
lant seeks to recover in this action.

The first ground assigned for reversal is the fail-
ure of the court to give certain instructions offered
by appellant.  It is the contention of appellant that
the tenant, Williams, procured and held under a new
lease commencing January 1, 1897, which lease did
not reserve to him the right to remove the fixtures
placed in the drug store in 1896, and that he thereby
abandoned any right he may have had to said fixtures
and had no title thereto which he could convey to
South-Longmoor & Co.  The same contention is made
in regard to South-Longmoor & Co., who held under
a new lease commencing January 1, 1902, and which
did not reserve to them the right to remove the fix-
tures in question.  The instructions refused submit-
ted these propositions to the jury.  There can be no
doubt that there is abundant authority to support
appellant's position that where a tenant, having a
right to remove fixtures erected by him on the demised
premises, accepts a new lease of such premises with-

out reservation or mention of any claim of such fixtures, and enters upon a new term thereunder, the right to remove is lost, notwithstanding his actual possession has been continuous. Ewell on Fixtures p. 174; Bronston on Fixtures, p. 219; Carlin v. Ritter, 68 Md. 478; 13 Atl. 370; 16 Atl. 301; 6 Am. St. Rep. 467. This doctrine, however, has been modified by some courts, and utterly repudiated by others, when the fixtures are what is known as "trade fixtures" and may be removed without injury to the freehold.

In Kerr v. Kingsbury, 39 Mich. 150, 33 Am. Rep. 362, the court said: "The right of a tenant to remove the erections made by him in furtherance of the purpose for which the premises were leased is conceded. The principle which permits it is one of public policy and has its foundation in the interest which society has that every person shall be encouraged to make the most beneficial use possible of his property the circumstances will permit of. On the other hand, the requirement that the tenant shall remove during his term whatever he proposes to claim a right to remove at all is based on a corresponding rule of public policy for the protection of the landlord, and which is that the tenant shall not be suffered, after he has surrendered the premises to enter on the possession of the landlord or succeeding tenant to remove fixtures he might and ought to have taken away before. A regard for the succeeding interests is the only substantial reason for the rule which requires the tenant to remove his fixtures during the term, but only before he surrenders possession and during the time that he has a right to regard himself as occupying in the character of tenant. Penton v. Robart, 2 East, 88; Weeton v. Woodcock, 7 M. & W. 14. But why the

right should be lost when a tenant, instead of surrendering possession, takes a renewal of his lease, is not very apparent.  There is certainly no reason of public policy to sustain such a doctrine.  On the contrary, the reasons which saved to the tenant his right to the fixtures in the first place are equally influential to save to him on a renewal what was unquestionably his before.  What could possibly be more absurd than a rule of law which in effect says to a tenant who is about to renew his lease: 'If you will be at the expense and trouble, and incur the loss, of removing your fixtures during the term and afterwards bringing them back, they shall be yours; otherwise, you will be deemed to abandon them to your landlord.'''

In the case of Radey v. McCurdy, 209 Pa. 306, 58 Atl. 558, 67 L. R. A. 359, 103 Am. St. Rep. 1009, trade fixtures were placed in a building by the tenant.  He afterwards renewed his lease without reserving the right to remove the fixtures.  The trial court held that the failure of the tenant to remove before the expiration of the first lease, or to reserve the right to so remove in the new lease, was an abandonment of the trade fixtures to the landlord.  In reversing, the Supreme Court of Pennsylvania said: ''Though this has been declared to be law by some courts, and the learned judge had authority outside this state to sustain him, we can not subscribe to such a doctrine as being either in harmony with reason or consistent with fair dealing with man and man.  When a tenant attached to the land fixtures necessary for him in the conduct of his business, the presumption is that, at the expiration of his lease, he will remove them; and it is right to do so.  They are put in for the benefit of the landlord; and until a tenant, after his term ex-

pires, leaves them on the premises in which he has no interest, no intention to abandon them to his lessor can be imputed to him. Hill v. Sewald, 53 Pa. 271, 91 Am. Dec. 209; Watts v. Lehman, 107 Pa. 106.

A very good discussion of the question may be found in Bergh v. Herring-Hall-Marvin Safe Company, 136 Fed. 368, 69 C. C. A. 212, 70 L. R. A. 756, wherein the court said: ''Counsel for defendants have collected numerous authorities in support of this rule, and, broadly considered, many of them sustain the defendant's contention; but we are constrained to think that the better reasoning so limits the application of the rule as not to include the present controversy. The rule is of ancient origin and has grown up step by step; the common law accepting some of the harsh analogies of the civil law, until, as trade and commerce expanded, it was found that a harsh application of it to the new relations was producing inequitable results never contemplated at the time the rule had its origin. The tendency of recent authority is toward a restricted application of the rule to trade fixtures so as to prevent manifest injustice. If the fixtures are appurtenant to the land so a deed or lease will necessarily include them, a reservation should be made if the tenant desires to retain them; but, as to chattels which can be removed and carried away without injury to the freehold, no such exception should be necessary. There can be no presumption that a tenant intends to present his personal property to his landlord because the lease fails to give him the right to remove it. He has that right without regard to the landlord's wishes, and nothing short of conduct which amounts to an estoppel and evinces a clear intention to abandon his property can deprive.

Thomas v. J. W. Gayle & Co.

him of that right. The law does not favor for-feitures."

A well considered case upon the subject is that of Smusch v. Kohn, 22 Misc. Rep. 344, 49 N. Y. Sup. 176. In that case the court said: "The defendant (land-lord) bases his claim upon Laughran v. Ross, 45 N. Y. 792, 6 Am. Rep. 173, Talbott v. Cruger, 81 Hun, 504, 30 N. Y. Supp: 1011, and Watriss v. Bank, 124 Mass. 571, 26 Am. Rep. 694; but it will be found that these cases relate to buildings erected by the tenant, or bank vaults, and such like permanent structures put up by him, which become appurtenant to the land, and consequently are incident of the subject-matter rehired. They do not concern ordinary movable chat-tels, which retain their distinctive character as per-sonal property, in reference to which a different rule —one much more liberal to the tenants—prevails. * * * Neither the presumed intention of the parties nor the character of the chattels give any color what-ever to the contention that they were to become the property of the landlord."

For the purpose of applying the rule of law above announced to the facts of this case, it will be nec-essary to consider the character of the fixtures in question. The evidence shows that the counters, pre-scription cases, soda fountain, etc., were not attached in any way to the realty, but could be moved about in the storeroom in any manner the tenant desired. The shelving cases were set up against the walls on the side of the building, and the only manner in which they were connected was by a small wire stuck in the wall and attached to the top of the case merely to keep it in position. Thus it will be seen that the fix-tures were such as could be easily removed without

the least injury to the freehold. While it is true that this court, in the case of Unz v. Price's Adm'r, 58 S. W. 705, 22 Ky. Law Rep. 791, recognized to a certain extent the doctrine contended for by appellant, we are not inclined to extend the doctrine any further than announced therein. In that case the tenant erected improvements upon the landlord's land. They were of a permanent character, and necessarily annexed to the freehold. In the case before us, however, no such question is presented. The greater part of the so-called "fixtures" were never annexed in any manner to the freehold. They were simply movable, personal property. Only the shelving cases were attached, and they were attached in a manner that permitted of their easy removal. Such fixtures are more nearly furniture than realty, and are not useful to the next tenant unless he happens to be in the same trade. To extend the doctrine founded upon permanent improvements annexed to the realty to trade fixtures such as are involved in this action would be to work a manifest injury in a great majority of cases.

Complaint is made of the admission of incompetent evidence. Even if incompetent, it was not prejudicial. Appellees, by the overwhelming weight of the evidence, showed title to the property in question.

Appellant's whole right to recover was based upon abandonment by the various tenants because of their failure to reserve in the new leases the right to remove the fixtures. Having held that this doctrine has no application to the facts of this case, appellees were, as a matter of fact, entitled to a peremptory instruction.

Judgment affirmed.

Petition for rehearing by appellant overruled.