Argued October 8, reversed as to Dudley and affirmed as to Wilson December 7, 1920, rehearing denied January 18, 1921.

## BLAKE–McFALL CO. *v.* WILSON.

(193 Pac. 902.)

**Fixtures—Annexation, Adaptation and Intention, the Three Tests to be Applied.**

1. Ascertainment of whether personalty has been transferred into realty requires the united application of three tests: Annexation, adaptation and intention.

**Fixtures—Freight Elevator Held a Fixture.**

2. Freight elevator bolted and attached to building and installed in the manner that freight elevators are usually installed by owners for the sole purpose of serving the building with the intention to take the elevator with them if they ever moved but without a definite intention to move at the time of its installation, *held* a fixture in suit against purchaser.

**Fixture—Considerations, in Ascertaining Intention of Party Making Annexation, Stated.**

3. The intention of the party making the annexation as to whether the personalty affixed is to constitute a fixture is to be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the construction and mode of annexation, and the purposes and use for which the annexation has been made.

**Fixtures—More Liberal Rule Applied When Annexation is by Tenant Than When Made by Owner.**

4. In ascertaining intention of party who made annexation, a more liberal rule is applied when the annexation is made by a tenant than when made by the owner, and an article annexed to the land may be regarded as a trade or domestic fixture, and therefore as personalty, if annexed by a tenant, but may be treated as realty if annexed by the owner.

Evidence—Deed Conveys Fixture Notwithstanding Parol Exception.

5. A conveyance of real estate will pass the fixtures thereto annexed if there is no exception in the deed of conveyance, notwithstanding a parol exception at the time of the sale, since to give effect to such parol agreement would vary the terms of a written deed.

Deeds—Contract Merged in Deed.

6. Generally, a contract to convey land is merged in a deed executed in performance thereof, and the deed operates as a satisfaction and discharge of the executory contract.

Fixtures—Elevator Excepted from Conveyance by Contract Did not Pass by Subsequent Deed Containing No Exception.

7. Deed did not pass title to freight elevator, though there was no exception stated, where contract executed prior to conveyance excepted the elevator, since such contract operated, as between the parties, to reimpress the elevator with the character of personalty.

Fixtures—Parties can Agree That a Chattel Shall Retain Its Character as Personalty.

8. Parties can agree that a chattel shall continue to retain its character as personalty, and, though attached in such manner that without such agreement it would lose its character as a chattel, the agreement will be given effect, as between the parties at least, and the chattel will be deemed to retain its character as personalty, if it can be removed without material injury to the article itself or to the freehold.

Fixtures—Grantee Conveying to Third Party Without Excepting Elevator to Which Grantor had Retained Title Liable to Grantor for Conversion.

9. Where deed failed to pass title to elevator by reason of previous contract between the parties reimpressing elevator with the character of personalty, the subsequent conveyance of the building by grantee to third party, who had no knowledge that elevator was not a fixture and that grantee had no title thereto, constituted conversion of elevator by grantee, rendering grantee liable to grantor for value of elevator as it constituted part of the building and not its value as torn down for removal, since the conveyance to innocent third party passed title to the elevator.

Fixtures—Tenant cannot Remove Fixtures After Expiration of Term.

10. Generally, a term tenant cannot remove fixtures after the expiration of his term, and the landlord becomes the absolute owner on tenant's surrender of premises without removal of fixtures, since tenant by failing to remove fixtures abandons the right to so do.

---

8. On the question of chattels attached to land retaining the character of personalty by agreement, see notes in 84 Am. St. Rep. 878, and 1 Ann. Cas. 312.
10. On effect of renewing tenancy without reserving right to remove fixtures, see notes in 3 Ann. Cas. 331; 20 Ann. Cas. 769; 1 J. R. A. (N. S.) 1193; 17 L. R. A. (N. S) 1135; 48 L. R. A. (N. S.) 294.

Fixtures—Tenant's Right of Removal not Abandoned Where He Continues in Possession Under New Lease.

11. The rule that a tenant is required to remove fixtures before expiration of his term or abandon the right to removal does not apply where the lease is renewed for a new term, and the new lease does not *per se* extinguish the right of the tenant to remove fixtures installed by him under immediately preceding lease.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

Blake-McFall Company, a corporation and a wholesale dealer in paper, stationery, and wooden and willow ware, brought this action against Samuel F. Wilson, Eugene A. Dudley, and Jessie Dudley, his wife, for the conversion of an Otis elevator which had been installed in a building originally erected by the plaintiff but subsequently conveyed by the corporation to Samuel F. Wilson and Eugene A. Dudley. The plaintiff claims that the elevator was personal property by force of an agreement. The defendants argue that the elevator was an irremovable fixture and a part of the realty.

The Blake-McFall Company owned the southwest corner of the block at Fourth and Ankeny Streets in Portland. The plaintiff constructed a six-story building on the land owned by it. The plaintiff moved into the building immediately upon its completion in 1910.

When the plaintiff erected the building, it did so with a view of occupying only a portion of it and renting the remainder; and, accordingly, when the plaintiff moved into the building it used only a portion of the structure, and the rest of the building was rented to tenants. When the building was erected, and as a part of its construction, two freight elevators were installed for the use of both the owner and the tenants. These two elevators served every floor in the building, from the basement to the sixth story. The plaintiff

purchased from the Otis Elevator Company a circular merchandise chute and caused it to be installed at the time of the construction of the building. This chute was designed for the sole use of the plaintiff; it extended from the basement to the fourth floor, and was located in that part of the building which was occupied exclusively by the plaintiff.

The chute proved to be unsatisfactory for the reason that it frequently delivered goods in a damaged condition; and when the plaintiff complained to the Otis Elevator Company that the chute had failed to fulfill the guaranty of the seller, the Otis Elevator Company offered to install a freight elevator in place of the chute; and, accordingly, in 1911 the chute was removed and the elevator was substituted. This elevator is the subject of this litigation.

In June, 1912, the plaintiff and the defendant Samuel F. Wilson entered into a written contract under the terms of which the latter agreed to purchase the premises owned by the plaintiff at Fourth and Ankeny Streets. The contract contained a stipulation by which Wilson agreed to accept the premises with the understanding that the elevator, now in controversy, and a certain merchandise chute (other than the one which was removed) and two sheet-iron slides, "are not included in the equipment of the building," and "also that no shelving, counters, or fixtures belong to the building." Although the contract for the sale of the premises was made between Blake-McFall Company and Wilson, the contract was carried out by the Blake-McFall Company delivering a deed, dated July 31, 1912, to the two defendants, Eugene A. Dudley and Samuel F. Wilson. This deed made no reference to the elevator and contained no provision excepting it from the operation of the conveyance.

Although the record does not disclose just when the
Blake-McFall Company determined to build a "new
home," it does fairly appear from the transcript of
testimony that the company had at some time before
making the contract with Wilson concluded to sell the
premises at Fourth and Ankeny Streets and to con-
struct for its use another building at some other loca-
tion in the city. After conveying to Dudley and Wil-
son, the plaintiff continued to occupy the building;
but it did so as the tenant of Dudley and Wilson.

In September, 1913, the Hughes Investment Com-
pany, a corporation, began negotiations with Wilson
and Dudley for the purchase of the premises bought by
them from the plaintiff; and as a result of these nego-
tiations the three defendants, Samuel F. Wilson and
Eugene A. Dudley and the latter's wife, Jessie Dudley,
on October 1, 1913, deeded the property to the Hughes
Investment Company. The deed to the Hughes In-
vestment Company did not except the elevator from
the conveyance. Moreover, none of the representatives
of the Hughes Investment Company had any notice
that the plaintiff claimed that the elevator had been
reserved as personal property when Wilson and Dudley
purchased the premises; and, indeed, it was not until
the late fall of 1914 that any representative of the
Hughes Investment Company was apprised of the claim
of the plaintiff. After the property was conveyed to
the Hughes Investment Company, the plaintiff con-
tinued to occupy the building; but it did so as the
tenant of the Hughes Investment Company. The
terms of the plaintiff's tenancy, so far as they related
to the rentals to be paid, the time of occupancy and
steps to be taken if either the landlord or the tenant
wished to terminate the tenancy, were the same under
the Hughes Investment Company as they were when

the plaintiff was occupying the building under Dudley and Wilson.

On February 27, 1914, the plaintiff notified the Hughes Investment Company of its intention to terminate the lease; but instead of ending the tenancy the parties made a new lease in December, 1914, and this last lease was not terminated until August, 1915, when the plaintiff moved into a new building which it had · constructed for its use.

On April 18, 1915, a fire occurred in the building at Fourth and Ankeny Streets and so damaged the elevator in controversy that it could not be used. The Hughes Investment Company carried insurance on the building. The Blake-McFall Company held an insurance policy covering the elevator. A suit was begun to determine whether the plaintiff or the Hughes Investment Company was entitled to collect the insurance money due on account of the elevator. That suit resulted in a decree awarding the money to the Hughes Investment Company, for the reason that the latter had purchased the premises without any notice of plaintiff's claim that it owned the elevator. Soon after the rendition of the decree in that suit, the plaintiff commenced this action.

At this point in the narrative it is appropriate to state that under date of April 29, 1915, Wilson wrote, signed, and delivered to the plaintiff a letter saying:

"Confirming my conversation with your Mr. Bruun in reference to the ownership of the elevator located near the south wall in the building No. 41 Fourth St., and regarding the merchandise chute located near the north wall in the building No. 47 Fourth St., I beg to say that this property, under our agreement dated June 7th, 1912, was reserved by and belongs to you and not to the owner of the building.

"Trusting this statement may enable you to satisfy insurance adjusters, I remain,"

The parties consenting, this cause was tried without the aid of a jury.  The Circuit Court found:

"That by express agreement between the plaintiff and the defendants said elevator was personal property with the right on the part of the plaintiff to remove the same at any time from said building."

The trial court also found that the elevator was so attached as to become a part of the real property "as against a purchaser" for value and without notice "of the agreement between the parties hereto by which said elevator retained its character as personalty; that it was of such construction and so annexed and attached to the building and the real property that it could be removed without substantial or permanent injury to the building or real property."  Based upon these findings and the added finding of the fact that the defendants sold the premises without notifying the Hughes Investment Company of the agreement reserving the elevator, the court concluded that the defendants were liable for the conversion of the elevator, and the plaintiff was entitled to a judgment; and, accordingly, a judgment was entered against the defendants, and they appealed.

> REVERSED as to Eugene A. Dudley and Jessie Dudley.
> AFFIRMED as to Samuel F. Wilson.

For appellants there was a brief over the name of *Messrs. Winter & Maguire,* with an oral argument by *Mr. J. P. Winter.*

For respondent there was a brief over the names of *Messrs. Chamberlain, Thomas, Kraemer & Humphreys,*

*Mr. Wm. S. Nash,* and *Mr. S. J. Graham,* with an oral argument by *Mr. Warren E. Thomas.*

HARRIS, J.—What was the character of the elevator in June, 1912, when the plaintiff agreed to sell and Wilson agreed to buy the premises at Fourth and Ankeny Streets? Was the elevator personalty, or was it realty? If the elevator, notwithstanding its installation in the building, had never lost its character as personal property, then it may be assumed that it was competent for the plaintiff and Wilson to agree, either by parol or in writing, that the elevator should continue to remain personalty and beyond the grasp of the deed. If such was the quality of the elevator, then Wilson and the plaintiff contracted to except from the deed an article which always had been and was then in truth personal property; and, hence, in that situation the contract would be binding at least as against Wilson, although it might not be binding as against Dudley if he purchased without knowledge of the actual character of the elevator and without notice of the agreement. If, however, the elevator lost its character as personalty and was transformed into realty when it was placed in the building, then we have to deal with a problem which is not easy of solution.

1, 2. In this, as in most jurisdictions, the rule for determining whether personalty has been transformed into realty requires the united application of three tests: (1) Annexation; (2) adaptation; and (3) intention: *Johnson* v. *Pacific Land Co.,* 84 Or. 356, 361 (164 Pac. 564); *Roseburg Nat. Bank* v. *Camp,* 89 Or. 67, 74 (173 Pac. 313); Ewell on Fixtures (2 ed.), 439. And after applying these tests it will be difficult to avoid the conclusion that the elevator lost its character as personalty and was transmuted into realty. The

president of the Blake-McFall Company testified that the elevator "was put in in the usual manner that elevators are installed." The superintendent of the Otis Elevator Company, who had charge of the installation of the elevator, explained that the elevator in question was installed in the same manner as the other two freight elevators which had been placed in the building at the time of its construction, and that it "was bolted" and attached "thoroughly permanent," and that "to tear the thing out, it would leave the building in a somewhat dilapidated condition," because "the floors would have to be recovered; the hatchway would have to be refloored over where the well-hole had been put in, and the timbers would all have to be taken out, of course, that had been placed in there to support the machine."

The elevator was used by the plaintiff and it was adapted to the purpose for which it was designed.

3, 4. The intention of the party making the annexation is, under modern authorities, the most important element. The intention is to be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the construction and mode of annexation, and the purposes and use for which the annexation has been made; and one of the most important and influential of these factors which must be considered when seeking to ascertain the intention is the relation and situation of the party making the annexation. A more liberal rule is applied when the annexation is made by a tenant than when made by the owner of the land; and, consequently, a given article annexed to the land or to a building on the land may, on the one hand, be regarded as a trade or domestic fixture, and therefore as personalty, if

annexed by a tenant, and, on the other hand, be treated as realty if made by the owner.

Subject to certain recognized limitations, an annexation not intended to be permanent will not transform an article of personal property into realty; but, in order to discover whether the annexation was intended to be permanent, the mode of annexation may be considered and also whether the annexation is to make the chattel on the land more useful. Here the elevator was installed for the sole purpose of serving the building; and although the elevator in controversy, if installed by a tenant, might in some circumstances be treated as a trade fixture, yet, since it was installed by the owner of the land, it must, in the circumstances thus far narrated, be treated as having been converted into realty the moment it was placed in the building; and therefore as between the grantor, Blake-McFall Company, and the grantees, Wilson and Dudley, the deed operated to convey the elevator to the grantees, unless it was legally kept from the embrace of the deed.

In addition to the facts already related there is another circumstance which must be noticed, although it does not affect the result. The president of the plaintiff corporation testified as follows:

"When we decided to sell that building, we decided to sell it because we realized that it was not suitable as a permanent home for our business, and inasmuch as we had expected to take these chutes with us if we ever moved, when we substituted the elevator for one of the chutes we also expected to take the elevator with us."

This is one way of saying that if they did not move they did not intend to detach the elevator. There is nothing to indicate when it was decided to sell. There is nothing to show the time when the plaintiff's officers realized that the building "was not suitable as a per-

manent home;'' and there is nothing to indicate when the officers of the corporation formed the intention or entertained the expectation of taking the chutes with them if they ever moved; and while it is true that according to the president's testimony the representatives of the plaintiff did, when they caused the installation of the elevator, expect to take the elevator with them "if" they "ever moved," there is nothing to show that they had then concluded to move. Indeed, the inferences fairly to be drawn from the record are that the company had not yet decided to move, for it must be remembered that the plaintiff had constructed this building for its own use and had moved into it immediately upon its completion in 1910; and the elevator was installed in 1911, a year afterwards. At the most, the intention, whenever formed by the corporation through its officers, was contingent, unexecuted, and inchoate, and hence it cannot control the result. In *Snedeker* v. *Warring,* 12 N. Y. 170, 178, the New York Court of Appeals held:

"The destination which gives to movable objects an immovable character results from facts and circumstances determined by law itself, and could neither be established nor taken away by the simple declarations of the proprietor, whether oral or written."

This rule was approved in *Wadleigh* v. *Janvrin,* 41 N. H. 503 (77 Am. Dec. 780). To the same effect are *Horne* v. *Smith,* 105 N. C. 322 (11 S. E. 373, 18 Am. St. Rep. 903); *Enterprise M. & M. Co.* v. *Cunningham,* 84 Or. 319, 323 (165 Pac. 224). Indeed, the plaintiff concedes in its printed brief that the secret intention with which chattels are attached does not govern, but that the controlling intention is that "which the law deduces from all the circumstances of the annexation." As between Blake-McFall Company, the grantor, and

Wilson and Dudley, the grantees, the elevator having been placed in the building by the owner and being in it at the time of the conveyance, it passed to the grantees as a part of the realty, unless it was legally excepted from the operation of the deed.

The plaintiff contends that even though it be decided that the elevator must be treated as realty because of the circumstances in which it was installed by the owner of the building, nevertheless it was legally excepted from the deed; and to support its contention the plaintiff relies upon the stipulation found in the written contract of June, 1912, between the plaintiff and Wilson, the letter written to Blake-McFall Company by Wilson under date of April 29, 1915, and parol evidence to the effect that when the deed was delivered it was understood by the parties that the elevator was excepted from the operation of the deed. The defendants attack the position taken by the plaintiff by arguing that the parol evidence was incompetent and must be excluded from consideration; and that the stipulations in the contract of June, 1912, were merged in the deed which was subsequently made in pursuance of the contract, and that, consequently, the deed is the only writing by which the rights of the parties can be measured.

Appellate courts disagree upon the question as to whether parol evidence is competent. There is an abundance of highly respectable authority for saying that the grantor may avail himself of parol evidence to show an oral agreement between himself and the grantee reimpressing the character of personalty upon a given article, where by annexation it had previously become a fixture and a part of the realty, and excepting it from the operation of the deed: *Foster* v. *Mabe,* 4 Ala. 402 (37 Am. Dec. 749); *Russell* v. *Meyer,* 7 N. D

335, 342 (75 N. W. 262, 47 L. R.. A. 637); *Harlan* v. *Harlan,* 20 Pa. 303; *Shell* v. *Haywood,* 16 Pa. 523; 19 Cyc. 1050. See, also: *Tyson* v. *Post,* 108 N. Y. 217 (15 N. E. 316, 2 Am. St. Rep. 409); *Fuller* v. *Tabor,* 39 Me. 519; 11 R. C. L. 1064; notes in 84 Am. St. Rep. 878; 13 Am. St. Rep. 153 and 572.

5. There is likewise an abundance of respectable authority for the view that a fixture which has taken on the character of realty, by reason of annexation by the owner of the land, cannot by parol be excepted from the operation of a deed conveying the land upon which the fixture is located: *Noble* v. *Bosworth,* 19 Pick. (Mass.) 314; *Leonard* v. *Clough,* 133 N. Y. 292 (31 N. E. 93, 16 L. R. A. 305); *Laird* v. *Railroad,* 62 N. H. 254 (13 Am. St. Rep. 564, 565); *Wadleigh* v. *Janvrin,* 41 N. H. 503 (77 Am. Dec. 780); *Horne* v. *Smith,* 105 N. C. 322 (11 S. E. 373, 18 Am. St. Rep. 903); 2 Devlin on Real Estate (3 ed.), 2300; 11 R. C. L. 1092. See, also: 19 Cyc. 1050; 11 R. C. L. 1064, 1066; 8 R. C. L. 1093; *Johnston* v. *Philadelphia Mtg. etc. Co.,* 129 Ala. 515 (30 South. 15, 87 Am. St. Rep. 75); *Beeler* v. *C. C. Mercantile Co.,* 8 Idaho, 644 (70 Pac. 943, 1 Ann. Cas. 310, 60 L. R. A. 283). Some authorities which exclude the admission of evidence of a parol agreement do so upon the ground that the agreement must be in writing in order to satisfy the statute of frauds; others say that a parol exception has the effect of varying the terms of the written deed; and still others rest this conclusion upon both grounds, and hold that a parol exception violates the statute of frauds and also varies the terms of the written deed. We quite agree with Dr. Ewell that:

"The better opinion seems clearly to be that a sale and conveyance of the real estate will (there being no

exception in the deed of conveyance) pass the fixtures thereto annexed, notwithstanding a parol exception thereof at the time of such sale'': Ewell on Fixtures (2 ed.), 515.

If personalty has been transformed into realty, then logically it ought to be governed by the rules which control realty.    The precedents which reach the conclusion that a fixture may by a parol agreement be constructively reconverted from realty into personalty do so only by adopting artificial and arbitrary premises. Moreover, the universal rule is that, in the absence of an agreement, a fixture which has taken on the character of realty passes with a conveyance of the land and that it passes by force of the writing.    If, then, the writing enforces a transfer of the fixture, the force of the writing is opposed and the terms of it are necessarily contradicted by any agreement which purports to withdraw such fixture from the operation of the deed; and therefore, if that agreement rests in parol, it inevitably results in an attempt by parol to vary the terms of the written deed.

The plaintiff points to *Muir* v. *Jones,* 23 Or. 332, (31 Pac. 646, 19 L. R. A. 441), and argues that this court has at least impliedly given assent to the parol exception doctrine.    The syllabus which precedes the reported opinion probably carries the implication suggested by the plaintiff; but a careful analysis of the opinion will disclose that the question involved here was there expressly excluded from consideration.    In *Muir* v. *Jones,* the appeal involved an instruction given to the jury.    This instruction consisted of two parts.    In the first part the court told the jury that if, when the owner sold the land, she by parol reserved to herself the sawmill, engine and boiler and the right to remove the same, and if defendant had

notice of such reservation, the owner could recover. In the second part of the instruction the court charged the jury that if the owner suffered the sawmill, engine, and boiler to remain on the premises and the defendant had no notice of a reservation, then the defendant would not be bound by such reservation, and the mill, engine, and boiler, would pass to the defendant with the conveyance of the real property. In. the opinion attention is expressly called to the fact that—

"No exception was taken to the first part of this instruction, but only to that portion of it which declares that the engine and boiler, when so attached to the soil as to become a part of the realty, pass to the grantee with the conveyance, unless he had notice of the intention to preserve them as personal property and reserve them from the operation of the conveyance."

Judgment for the defendant was affirmed on the ground that he was a *bona fide* purchaser without notice. Thus it is seen that the controversy in *Muir v. Jones* did not require a decision of the point presented here; and, moreover, the court there took the precaution of saying that the point was not saved by an exception.

It must be remembered that we are not now dealing with an article which by reason of an agreement or by force of attending circumstances has always been personal property and never changed from personalty into realty. If the elevator had never been caused to take on the quality of realty, quite a different situation would be presented. But we are dealing with a subject which, as we have determined, took on the character of. realty when the owner annexed it to the building on its land. We are unable to concur with counsel for the plaintiff. We think that the parol exception doctrine is, in the end, fraught with danger to prop-

erty owners; for under that doctrine every ordinary warranty deed would be subject to attack by parol exceptions. The very purpose of a written conveyance is to secure safety and security in ownership. We think that it is better to hold fast to safe and tried moorings than to adopt a rule which will set adrift upon an uncharted sea every ordinary warranty deed and abandon every one of them to the hazard of collision with uncertain and unknown but always possible parol exception derelicts: Bronson on Fixtures, § 65c.

As between grantor and grantee the strict rule of the common law prevails, and all fixtures annexed to the realty pass by a conveyance of the freehold, unless they have been excepted from the conveyance in some manner sanctioned by the law: *Noble* v. *Bosworth,* 19 Pick. (Mass.) 314; *Wolff* v. *Sampson,* 123 Ga. 400 (51 S. E. 335); 11 R. C. L. 1067, 1068. Since, as we hold, the law does not sanction a parol agreement, it follows that the elevator was not legally excepted from the deed, unless the written contract of June, 1912, had that effect.

The contention of the defendants is that the contract of June, 1912, together with all its stipulations, was merged in the subsequent deed which was executed in performance of the contract; that by reason of such merger the contract was extinguished so that it is not now existent; and that, therefore, the deed is now the only writing by which the rights of the parties can be determined. The defendants are not without authority for their position, for the following precedents support their contention: *Bond* v. *Coke,* 71 N. C. 97, 99; *Clifton* v. *Jackson Iron Co.,* 74 Mich. 183 (41 N. W. 891, 16 Am. St. Rep. 621); *Noble* v. *Bosworth,* 19 Pick. (Mass.) 314.

6, 7. Stated broadly, the general rule is that a contract to convey land is merged in a deed executed in performance of such contract and the deed operates as a satisfaction and discharge of the executory contract: 2 Devlin on Real Estate (3 ed.), § 850a; 27 R. C. L. 529. There is a class of cases, however, where it is held that, if the preliminary contract contains a stipulation of which the conveyance is not a performance, such stipulation survives and is not merged in the deed: 27 R. C. L. 532; 2 Devlin on Real Estate (3 ed.), § 850b. In other words, the deed effects a merger to the extent that it is contemplated that a deed shall be a performance of the contract. Concrete illustration of this doctrine is found in *Brunswick Const. Co.* v. *Burden,* 116 App. Div. 468, (101 N. Y. Supp. 716), where the facts, in all essential particulars, were like those here. However, we do not decide whether this rule is applicable to the present controversy; for in our view the written contract signed by the plaintiff and Wilson operated, as between them, to reimpress the elevator with the character of personalty.

8. The established rule is that before annexation, interested parties can agree that a chattel shall continue to retain its character as personalty, and, although such chattel is attached to the realty in such manner that without such agreement it would lose its character as a chattel, the agreement will be given effect, as between the parties at least, and the chattel will be deemed to retain its character as personalty, if it can be removed without material injury to the article itself or to the freehold: *Henkle* v. *Dillon,* 15 Or. 610, 615 (17 Pac. 148); *Landigan* v. *Mayer,* 32 Or. 245, 250 (51 Pac. 649, 67 Am. St. Rep. 521); *Alberson* v. *Elk Creek Gold Min. Co.,* 39 Or. 552, 559 (65 Pac. 978); *Johnson* v. *Pacific Land Co.,* 84 Or. 356, 361

(164 Pac. 564); *Roseberg Nat. Bank* v. *Camp,* 89 Or. 67, 75 (173 Pac. 313); 1 Tiffany on Real Property, 542; *Fuller-Warren Co.* v. *Harter,* 110 Wis. 80 (85 N. W. 698, 84 Am. St. Rep. 867, 53 L. R. A. 603). Under the finding of fact made by the trial court to the effect that the elevator could have been removed without substantial injury, it would have been competent, for example, for a landlord and a tenant to agree that an elevator similarly installed and used by the tenant should preserve its character as personalty.

So, too, the parties interested can accomplish after annexation what they could have accomplished before annexation.

When the plaintiff and Wilson agreed that the elevator should not be "included in the equipment of the building" and "that no shelving, counters or fixtures belong to the building,'" they at that moment agreed to treat the elevator as personal property; and, consequently, although not physically detached, it was thereupon constructively detached, and thenceforth it was, as between Wilson and the plaintiff, personal property. It was competent for the parties to make a collateral agreement respecting the elevator. The law did not require all the stipulations to be in a single writing. When the deed was executed, it operated only upon realty; personal property was beyond its grasp. The deed conveyed the land, and every annexed article which at the time of the delivery of the deed possessed the quality of realty; it did not transfer personalty; and therefore, since the preliminary written agreement had already reconverted the elevator from realty and reimpressed it with the character of personalty, at least as between the plaintiff and Wilson it was personal prop-

erty and as such was not transferred by the deed: *Brunswick Const. Co.* v. *Burden,* 116 App. Div. 468 (101 N. Y. Supp. 716); *Power* v. *Garrison,* 141 Ga. 429 (81 S. E. 225); *Richards* v. *Gilbert,* 116 Ga. 382 (42 S. E. 715); Ewell on Fixtures (2 ed.), 470; Bronson on Fixtures, § 55b; 1 Jones on Mortgages (6 ed.), § 431a; 11 R. C. L. 1064, 1066; *Robinson Codfish Co.* v. *Porter Fish Co.,* 75 Wash. 181 (134 Pac. 811); *Foster* v. *Mabe,* 4 Ala. 402 (37 Am. Dec. 749); *Tyson* v. *Post,* 108 N. Y. 217 (15 N. E. 316, 2 Am. St. Rep. 409); *Johnston* v. *Philadelphia Mtg. etc. Co.,* 129 Ala. 515 (30 South. 15, 87 Am. St. Rep. 75).

The plaintiff relies upon the conveyance from Wilson and the Dudleys to the Hughes Investment Company to prove a conversion of the elevator by the defendants. The defendants assert that this conveyance did not amount to a conversion, and in support of their position cite *Walsh* v. *Sichler,* 20 Mo. App. 374. The facts reported in that precedent are dissimilar to the facts here. That case involved trade fixtures installed by a tenant during his tenancy. The purchasers and subsequent landlords were advised of the lease and knew of the tenancy; and the original owner and landlord neither knew that these fixtures had been placed in the building nor intended to convey anything that belonged to the tenant. The purchasers informed the tenant that they had bought the premises and forbade him from removing the fixtures as they claimed that the fixtures passed with the deed. "After this, the plaintiff voluntarily quit the premises, leaving the fixtures in the house." Manifestly, the conveyance by the original owner did not operate as a conveyance of the trade fixtures which had been installed by the tenant.

9. In the instant case, however, the elevator became personal property only by force of an express agreement; and, moreover, as to all persons without knowledge of that agreement the elevator was indubitably realty. When, therefore, Wilson and the Dudleys made a deed to purchasers without notice of the agreement, the inevitable effect of the deed was to transfer the elevator to such purchasers, and it was then beyond the power of the plaintiff to avoid the effect of that deed. Since, in the circumstances, the deed irresistibly operated to convey the elevator, Wilson as a maker of the deed in reason and on authority must be deemed to have treated the elevator as his property and hence converted it to his own use: 19 Cyc. 1074; *Smyth* v. *Stoddard,* 203 Ill. 424 (67 N. E. 980, 96 Am. St. Rep. 314); *Bircher* v. *Parker,* 43 Mo. 443. See, also: *Rosenau* v. *Syring,* 25 Or. 386, 390 (35 Pac. 844); *Eldridge* v. *Hoefer,* 45 Or. 239, 244 (77 Pac. 874); Bronson on Fixtures, § 378; Ewell on Fixtures (2 ed.), 650.

10. It is next argued by the defendants that, by entering into a new lease with the Hughes Investment Company after it had purchased the premises, the plaintiff lost its right to move the elevator, even though it be decided that such right previously existed. The general rule is that a term tenant cannot remove fixtures after the expiration of his term; and the prevailing doctrine is, too, that the landlord becomes the absolute owner of fixtures if the tenant surrenders the premises without removing the fixtures. The right to remove a fixture may, like many other rights, be abandoned or waived; and, consequently, when the tenant's term ends and his right to possession terminates and he leaves fixtures on the premises, he is deemed to have waived his right and

abandoned the fixtures: 11 R. C. L. 1071. As a supposed outgrowth of this general rule, the doctrine has arisen in many, and indeed in most, jurisdictions that, if a new lease is taken without reserving the right to remove fixtures installed during the term of the old lease, such fixtures cannot be removed by the tenant during or at the end of the new lease, notwithstanding the new lease began contemporaneously with the end of the old lease and the tenant has had actual and continuous possession of the premises from the beginning of the old lease until the expiration of the new lease: *Wadman* v. *Burke,* 147 Cal. 351 (81 Pac. 1012, 3 Ann. Cas. 330, 1 L. R. A. (N. S.) 1192); 11 R. C. L. 1072.

Under this doctrine, if the new lease is silent upon the subject of fixtures installed during the old lease, the tenant loses the fixtures, unless he moves them out of the building before the end of the old lease, notwithstanding the fixtures are his property at the very moment the new lease is executed and in spite of the fact that he not only does not intend to abandon them but supposes that they continue to be his property when the new lease begins, and in despite of the fact that not a single moment of time intervenes giving the landlord the right of possession; but if, however, an hour before the end of the old lease the tenant loads his fixtures on a truck and one minute before the expiration of his old term carries them around the block and then one minute after the beginning of the new term returns with them and reinstalls them, they continue to be his property with the accompanying right of removal. Judge COOLEY, whose uncommon fund of common sense has so greatly enriched American jurisprudence, has pertinently said:

"What could possibly be more absurd than a rule of law which should in effect say to the tenant who is about to obtain a renewal: 'If you will be at the expense and trouble, and incur the loss, of removing your erections during the term, and of afterward bringing them back again, they shall be yours; otherwise you will be deemed to abandon them to your landlord' ": *Kerr* v. *Kingsbury,* 39 Mich. 150 (33 Am. Rep. 362).

11. There may, of course, be circumstances attending the execution of a new lease showing an intention to abandon the right to remove fixtures; but, it seems to us, a rule which declares that a new lease of its own force operates as an abandonment of fixtures installed under an old lease is without the support of any substantial or persuasive reason. In practice this rule is a trap and a snare for the unwary tenant, for in the every-day affairs of life most tenants making a new lease would assume, and indeed so would most landlords, that fixtures which were the property of the tenant during the old lease would continue to be the property of the tenant under the new lease. In our view, the reasons which give support to the rule that the failure of a term tenant to remove his fixtures before the expiration of his term and the extinguishment of his right of possession are not present when the lease is immediately followed by a new lease and the tenant's possession, actually and rightfully, has been continuous and without interruption; and, since the reasons for the rule do not exist, the rule itself ought not to exist. We hold that a new lease does not *per se* extinguish the right of the tenant to remove fixtures installed by him under an immediately preceding lease. This view is supported by the following precedents: *Kerr* v. *Kingsbury,* 39 Mich. 150 (33 Am. Rep. 362); *Bergh* v. *Herring-Hall*

*Marvin Safe Co.*, 136 Fed. 368 (69 C. C. A. 212, 70 L. R. A. 756); *Thomas* v. *Gayle*, 134 Ky. 330 (120 S. W. 290, 135 Am. St. Rep. 412, 20 Ann. Cas. 766, 28 L. R. A. (N. S.) 767); *Sassen* v. *Haegle*, 125 Minn. 441 (147 N. W. 445, 52 L. R. A. (N. S.) 1176); *Radey* v. *McCurdy*, 209 Pa. 306 (58 Atl. 558, 103 Am. St. Rep. 1009, 67 L. R. A. 359).

The judgment was against the three defendants. The facts as disclosed by the record are not sufficient to sustain a judgment against Eugene A. Dudley or his wife. However, Wilson cannot escape liability.

When Wilson converted the elevator it was annexed to the building. When the elevator was sold to the Hughes Investment Company, it was disposed of as a part of the building and presumably was paid for as a part of the building; and, hence, Wilson became liable for the value of the elevator as it then was,—"not its value as torn down for removal": *Smyth* v. *Stoddard*, 203 Ill. 424, 430 (67 N. E. 980, 982, 96 Am. St. Rep. 314).

As against Dudley and his wife, the judgment is reversed; but, as against Wilson, the judgment is affirmed.

AFFIRMED IN PART, REVERSED IN PART.

REHEARING DENIED.

McBRIDE, C. J., and BENSON and BURNETT, JJ., concur.