[Filed January 16, 1888.]

# HENKLE AND DAVIS, Appellants, v. GEORGE W. DILLON et al., Respondents.

Real Property—Fixtures—Relaxation of Common Law.—When and under what circumstances and conditions a chattel becomes annexed to land, so as to subject it to the same conditions in every respect, is frequently difficult to determine; but with the growth and development of trade and manufactures, much of the strictness of the common law on this subject has been relaxed.

Fixture—What is.—To give a chattel the character of a fixture, and render it immovable, three things are necessary: (1) Actual annexation to the realty, or some appurtenant thereto; (2) application to the purpose or use to which that part of the realty with which it is connected is appropriated; and (3) the intention of the parties making the annexation to make a permanent accession to the freehold.

Agreement that Character of Chattels shall be Unchanged by Annexation—Effect of.—When before annexation parties agree that things personal in their character shall continue to be personalty, or retain their character as chattels though annexed to the realty so as to become a part of it without such agreement, they will continue to be chattels if they can be removed without material injury to the articles themselves, or to the freehold.

Facts of Particular Case.—Considered and held that the machinery in question was not so annexed to the freehold as to become a part of it.

Appeal from Benton County. Affirmed.

*J. W. Rayburn*, for Appellants.

*John Kelsay*, *S. T. Jeffreys*, and *W. S. McFadden*, for Respondents.

*E. B. Williams*, for Staver and Walker.

Strahan, J.—Plaintiffs commenced this suit to foreclose a mortgage on certain real property in Benton County, given by the defendants, George W. Dillon and Olive, his wife, to the plaintiffs, to secure the payment of a certain promissory note to them for the sum of $1,002.20, with interest after April 26, 1886. The mortgage was executed on the same day. The note was signed by Dillon Bros., a firm composed of G. W. Dillon, D. M. Dillon, and J. W. Dillon, all of whom were made defendants in the suit. After the suit was commenced, and before final decree, the defendants Staver and Walker appeared, and made such representations to the court as to their interest in some part of

the litigation, that the court ordered them to be made parties defendant, and gave them leave to file an answer.

They allege in their answer, in substance, that on the twenty-sixth day of March, 1884, Dillon Bros. executed to the J. I. Case Threshing Machine Company a chattel mortgage, to secure the payment of various promissory notes therein described, amounting to $1,130, and interest, which chattel mortgage included the twelve-horse power traction self-steering engine in controversy in this suit, and that said chattel mortgage was duly filed with the county clerk of Benton County, Oregon, on the twenty-eighth day of March, 1884, and entered in the book of chattel mortgages, No. 1, page 168, all before said engine was in any manner attached to the land described in complaint; that said engine stood on wheels, and at the time said chattel mortgage was made, it was agreed and understood that the same should continue to be personal property, and that said J. I. Case Threshing Machine Company, or its grantees or assigns, should hold and continue its lien upon said engine until fully paid, and that said engine is and always remained personal property; that said engine was attached to said premises in such a manner that it could be easily removed without any material injury to the premises or said engine; that eight hundred dollars of said indebtedness still remains due and unpaid. For a separate defense, Staver and Walker allege that Dillon Bros. and Jos. Staver made their certain other chattel mortgage to secure the pay ment of three hundred dollars to Staver and Walker, which mortgage was dated December 20, 1884, and was duly filed with the county clerk on the thirty-first day of December, 1884, and entered in the book of chattel mortgages, and that said last-mentioned mortgage included one J. I. Case T. M. Co.'s double saw-mill, No. 163, together with all saws, tools, belts, or appurtenances in anywise connected therewith, and that it was stipulated in said chattel mortgage that said mill was to be located on forty acres of land, being northwest one quarter of the southeast one quarter, section 5, township 11 south, range 5 west; that plaintiffs had notice of an agreement that said saw-mill should remain personal property, and was subject to Staver and Walker's

lien until they were fully paid, and that the same has always remained personal property; that said saw-mill and appurtenances were so attached to the premises mentioned in the complaint that they could be easily removed without any material injury to said saw-mill or appurtenances; and that said note and interest remains due and unpaid. Properly certified copies of said chattel mortgages are annexed to the answer. It is also alleged in the answer that Staver and Walker had, before the suit was commenced, succeeded to the interest of the J. I. Case T. M. Co. in the note and mortgage made to that company by assignment. There were some affidavits annexed to said chattel mortgages for the purpose of renewing same, but the view we have taken of the case renders their consideration unnecessary. The evidence was taken in writing, and accompanies the transcript. The court below rendered a decree foreclosing the plaintiffs' mortgage on the real property described in the complaint, but refused to include in the decree an order for the sale of the engine and portable saw-mill described in the chattel mortgages, from which decree the plaintiffs have appealed to this court. An examination of the positions relied upon by the appellants' counsel is therefore necessary.

1. The main position relied upon by him is that before the date of the plaintiffs' mortgage, Dillon Bros. and Staver had so annexed the twelve-horse power traction self-steering engine and the portable saw-mill in controversy to the real estate described in the mortgage, as to make the same a part of the land, and subject to the mortgage. From the evidence taken it appears that at the time the engine and mill were placed upon the premises, the legal title to said land was in the State; but G. W. Dillon was in possession thereof under a contract of purchase, and that before the plaintiffs' mortgage was executed, he made full payment to the State for said land, and received a deed therefor. It further appears that Dillon Bros. occupied this land for the purposes of their milling business. The engine was held in place by three blocks that were sitting on the sills. The floor was laid right around them, so that they couldn't move on the floor. Two of these blocks had grooves cut in the top,

so that they could fit the hind axle of the engine, and the front block was cut in a circle to fit the front end of the boiler, and the engine was sitting on those blocks.  The boiler was let down on the blocks above mentioned, and a brick ash-pan was put underneath the fire-box of the boiler.  The ash-pan was in no way fastened to the engine or boiler.  The engine was connected to a J. I. Case portable double circular saw-mill by means of a ten-inch rubber belt running from the fly-wheel of the engine to a pulley on the mandrel of the mill.  The engine was in no way attached to the premises on which it stood.  The saw-mill machinery was all connected to a square frame known as the buck frame, which was about seven feet long by four feet wide, which was made of timbers three by twelve or fourteen inches. The mandrels, pulleys, levers, arbors, and belts were all connected to the square frame, except the carriage.  This frame was set on the floor of the building, and four bolts came up from the floor at each corner of the frame, and went through a block which was laid across the corner of the frame and screwed down in such a manner as to clamp the frame so it would not move around. The object of locating said engine and mill on said premises was to saw there until timber became scarce and unhandy, and then move to where it was more convenient to timber.  This machinery is the same described in the chattel mortgages mentioned in the answer of Staver and Walker.

It further appears that after Dillon Bros. purchased the engine in question, the first work they did with it was in sawing wood around Corvallis, and when threshing season commenced, they took it and went out threshing; after the threshing season was over, they continued to saw wood around town until late in the fall.  The following spring they moved out on Soap Creek, and sawed lumber until harvest, and during the threshing season they ran a thresher with the engine until the season was through, and then moved back on Soap Creek and continued to saw until fall; then they moved the engine to another place, and continued to saw till the first of June, and then they took the engine and again went out threshing.  In the forepart of July, 1886, the engine was taken out of the building where it had been used to

run the saw-mill for the purpose of again engaging in threshing, and on the highway, in said county, Staver and Walker took possession of the same, and also about the same time they took actual possession of the saw-mill in controversy. In removing the engine from the building where it had been placed by Dillon Bros. it was necessary to saw off a girt. The object was to put in a door at that place so that the engine could be taken in and out at pleasure. The mill had remained there in that manner from the latter part of January, 1885, to January, 1886. In September, 1886, the mill was taken to Souver's Station in Polk County, and left in the freight office. Staver and Walker had possession at the time of its removal. It also appears that Staver and Walker accepted the chattel mortgage in question on the mill as security for the purchase price thereof, and with the understanding that it would be placed on the land described. Do the undisputed facts subject the portable saw-mill and the traction self-steering engine in controversy to the plaintiffs' mortgage? The plaintiffs' sole reliance to accomplish this result is, that they were affixed to the soil, and became a part of the realty, and are subject to the same rules of law as the soil itself.

When and under what circumstances a chattel becomes so annexed to land as to subject it to the same conditions in every respect is frequently difficult to determine. There can be no doubt that with the growth and development of trade and manufactures, much of the strictness of the common law on this subject has been relaxed. According to the more recent authorities to give a chattel the character of a fixture, and to render it immovable, three things are necessary: "(1) Actual annexation to the realty or some appurtenant thereto; (2) application to the purpose or use to which that part of the realty with which it is connected is appropriated; and (3) the intention of the parties making the annexation to make a permanent accession to the freehold." (Herman on Chattel Mortgages, 6; Ewell on Fixtures, 21, 22; Tyler on Fixtures, 114; *Case Manuf. Co.* v. *Garver*, 13 N. E. Rep. 493.) So when things personal in their character are about to be annexed to the realty, and before such annexation the parties by express agreement provide that such

chattels shall retain their character as personalty, or retain their
character as chattels, although attached to the realty in such
manner that without such agreement they would lose that char-
acter, they will continue to be chattels, if they can be removed
without material injury to the articles themselves, or to the free-
hold.   The agreement will govern, if the article is so attached
that it can be removed without material injury to it or to the
realty, or if from the circumstances attending, it is evident or
may be presumed that such was the intention of the parties;
and in every such case the thing which would otherwise have
become a fixture retains its personal character.   (*Ford* v. *Cobb*,
20 N. Y. 344, involved this principle.)   In that case certain
salt kettles were set in arches upon the salt block, in such man-
ner that they could not be removed, except by tearing off a
portion of the upper bricks of the arch and prying the kettles
out by a plank and bars.   A chattel mortgage had been exe-
cuted on the kettles, and it was held that they continued to be
chattels, and subject to said chattel mortgage.

In reaching this conclusion the court said:   "Assuming, then,
that these kettles would be parcel of the real estate, if the owner
of the land was the unqualified owner of them when they were
put up in the arch, we are to determine as to the effect of the
arrangement in this case, by which the owner of the land and
the owner of the kettles agreed that notwithstanding their
annexation to the freehold in the manner which was contem-
plated, they should continue to be personal property so far as
should be necessary to give effect to the personal mortgage.   It
will be readily conceded that the ordinary distinction between
real estate and chattels exists in the nature of the subject, and
cannot in general be changed by the convention of the parties.
Thus it would not be competent for parties to create a personal
chattel interest in a part of the separate bricks, beams, or other
materials of which the walls of a house were composed.   Rights,
by way of license, might be created in such a subject, but it
could not be made alienable as chattels, or subjected to the gen-
eral rules, by which the succession of that species of property is
regulated.   But it is otherwise with things which, being origi-

nally personal in their nature, are attached to the realty in such a manner that they may be detached without being destroyed or materially injured, and without the destruction or material injury to things real, with which they are connected; though their connection with the land or other real estate is such that in the absence of an agreement, or of any special relation between the parties in interest, they would be part of the real estate."

So in *Ewes* v. *Estes*, 10 Kan. 314, it is said: "But when we consider the purpose of the parties as evinced by 'the mortgage to make the engine retain the character of a chattel, regardless of the manner of its attachment to the mill, and as the mortgage violated no principle of law, wrought no injury to the rights of any, and was in the interest of trade, we have no doubt the engine continued to be personal property." And to the same effect is *Sisson* v. *Hibbard*, 17 Hun, 420, which case was affirmed by the court of appeals, 75 N. Y. 542; *Kinsey* v. *Bailey*, 16 Hun, 452; Jones on Chattel Mortgages, § 125; *Tift* v. *Horton*, 53 N. Y. 377; *Goddard* v. *Gould*, 14 Barb. 662; *Mott* v. *Palmer*, 1 N. Y. 564; Herman on Chattel Mortgages, § 138; *Gorman* v. *Dodge*, 9 West. Rep. 716. Considering the portable character of these chattels, the purposes and manner of their use, the way they were annexed, and the fact that the equitable title to the land was in one of the defendants only, while the ownership of the chattels was in the firm of Dillon Bros., and I would have no doubt whatever that without considering the chattel mortgages at all, or allowing their execution to have any influence on the question, this machinery never lost its character as a chattel, and remained unaffected by the plaintiffs' mortgage; but when is added to this the agreement between the parties, that the same should continue to be personalty, and the execution of the chattel mortgages, with power to take possession and sell in case of default, the correctness of that conclusion I think is placed beyond controversy.

2. Counsel for appellants insisted that there was no proof of the existence of the chattel mortgages in the record. He overlooks the effect of the pleading. Copies of said mortgages, certified by the clerk, so as to make them evidence, are attached to

the answer of Staver and Walker, and have come here without objection. In addition to this, throughout the whole case, their existence is constantly assumed. Besides it does not appear that there was any objection in the court below to the copies attached to the answer, and so far as appears, this objection is made in this court for the first time, and it could not for that reason be allowed to prevail.

3. Objection is also made that there is no proof that the mortgage to the J. I. Case Co. had been assigned to Staver and Walker. The conclusion reached renders that question immaterial. The existence of the mortgage and the actual possession of the mortgaged property after default are enough. The plaintiffs, showing no interest in the property, are not in a condition to question the rights of Staver and Walker. Mere possession must prevail in the absence of a superior title. There was some question made at the argument, as to the effect of the filing of these chattel mortgages, in giving notice to subsequent purchasers or encumbrancers, and of the failure of the mortgagee to renew the same under the statute; but there being no subsequent purchaser or encumbrancer in the case, the consideration of these questions is unnecessary. The mortgages were good and effectual between the original parties, and that is as far as we need inquire.

The decree of the court below will be affirmed.