Argued December 20, 1935; reversed March 10, 1936

MATTECHEK *v.* PUGH ET AL.

(55 P. (2d) 730)

[1]

*W. C. Winslow* and *Custer E. Ross*, both of Salem, for appellants.

*Allen G. Carson* and *Guy O. Smith*, both of Salem, for respondent.

ROSSMAN, J. The property which the plaintiff claims the defendants converted to their use is described

in the amended complaint as "16 Electro-Kold electric refrigerators, . . . electric light fixtures, 1 heating plant, . . ." We omit numerous other articles consisting of mattresses, davenports, rugs, tables, etc., which with the articles just mentioned comprised the furnishings of a small apartment house located in the city of Salem and known as the Olympic Apartments.

The first contention argued by the defendants presents the issue whether the articles mentioned in the above quoted language were fixtures or personal property. This contention is based upon three exceptions which are argued as one assignment of error in appellant's brief. The first exception was saved when the court permitted the plaintiff to amend his complaint during the trial by adding to the list of articles mentioned in it "1 heating plant". The other two exceptions were saved during the presentation of the evidence. The evidence indicates that the apartment house in which these articles were installed was 40 by 80 feet in its ground floor dimensions, three stories high, and contained 16 apartments. The electric light fixtures, according to the evidence, were of the ordinary kind, which we assume means that they were fastened to the ceiling by screws. One of the "16 Electro-Kold electric refrigerators" was installed in each apartment, and all were connected with a central generating unit by means of pipes. The refrigerators could be readily disconnected and removed from the building. The heating plant was a tubular boiler and firebox served by an oil burner. It was installed on the ground floor and was connected with the radiators and plumbing fixtures in the apartments by pipes. It was encased with insulating material. While the evidence upon the subject is scant, it indicates that the light fixtures,

refrigerators and boiler could be removed from the premises without materially injuring the building.

Although the witnesses did not explicitly so state, the evidence warrants the statement that the defendants constructed the building. It was not entirely complete on June 2, 1927. On or about that day the defendants executed a deed, dated June 2, 1927, conveying to M. W. Mattechek and his wife, who are the parents of the plaintiff, the real property comprising the apartment house. It describes the real property by metes and bounds and makes no mention of either the apartment house or the articles with which we are now concerned. On or about the same day the defendants executed a bill of sale, dated June 3, 1927, transferring to the same persons some of the property which is the subject matter of this action of conversion. It describes, among other items, the following: ". . . electric fixtures complete . . . Electro-Kold refrigerating system, heating plant" and, referring to all of the items transferred, states: "all of said personal property being located in the apartment house". May 16, 1928, the Yakima Hardware Company, a corporation, instituted in the circuit court an action against the aforementioned M. W. Mattechek upon a promissory note, and on December 6, 1929, recovered judgment. In September of 1930 when $1,841.26 was unpaid upon that judgment, a writ of execution was obtained and on October 10, 1930, the sheriff sold to the Yakima Hardware Company all of the articles in the apartment house. The certificate of sale enumerates, among other articles, 12 Electro-Kold refrigerators and "1 oil burner furnace and tank". The certificate describes all of the articles in the apartment house, and since all of those articles are described in the complaint, the two instruments cover the same property. October 13, 1930, the Yakima

Hardware Company assigned its certificate of sale "together with all its right, title and interest in and to all personal property therein described" to P. J. Pugh, one of the defendants. January 22, 1932, Pugh executed a bill of sale whereby he transferred to his wife, Grace E. Pugh, title to the contents of the apartment house. This bill of sale, in describing the property conveyed, includes 13 Electro-Kold refrigerators and an "oil burner furnace and tank".

The amended complaint in this action, in describing the property converted, includes "16 Electro-Kold electric refrigerators . . . electric light fixtures". At the trial the challenged order was made which added by interlineation "1 heating plant". The answer, after denying all averments of the amended complaint, alleges that on December 6, 1929, the Yakima Hardware Company recovered judgment against M. W. Mattechek in the sum of $1,841.26; that on September 23, 1930, a writ of execution was issued; and that on September 23, 1930, the sheriff levied upon "the following described personal property". Here follows a list of articles which the answer states were in the apartment house, which includes "Electro-Kold refrigerators and oil burner and tank, . . . the same being the identical personal property described in plaintiff's complaint". After alleging that the sheriff advertised the "said personal property" for sale, the answer alleges that on October 11, 1930, he sold "the above described personal property to said Yakima Hardware Company for the sum of Seven Hundred Fifty Dollars ($750); that thereafter and on the 13th day of October, 1930, said Yakima Hardware Company did sell to P. J. Pugh the personal property above particularly described". A second further answer, after incorporating within itself by reference the averments just reviewed, pleads

a defense founded upon the Bulk Sales statute and states that "at no time prior to July 7, 1934, did defendants know or have reasonable cause to believe that the plaintiff herein had any ownership in and to said personal property. . . . that the aforesaid personal property represented the fixtures and equipment as aforesaid of said Olympic Apartments and also represented substantially all the personal property owned by said M. W. Mattechek". A third separate defense, which incorporates within itself by reference the first and second further answers, alleges that "the purported sale of May 12, 1930, of the personal property above described, was made, and said bill of sale executed" for the purpose of defrauding the creditors of M. W. Mattechek.

■ Whether an article attached to the realty is real property or personal property is dependent not only upon its character and the manner of its attachment but also to some extent upon agreements, if any, relating to its status. The giving of a bill of sale to an article attached to the soil at the same time a deed is executed covering the realty is an indication that the parties intended the articles should be deemed personal property. The bill of sale in such an instance effects a constructive severance of the article from the soil and restores to it its original status as personalty. For instance, in *Zeller v. Adam,* 30 N. J. Eq. 421, one Kolb, who owned the land, buildings, machinery, etc., comprising a brewery, executed to a purchaser a deed and a bill of sale on the same day, which together transferred title to the land, machinery, etc., comprising the brewery. The bill of sale described as goods and chattels "one steam engine, boiler, shafting and hangings, one malt mill . . .". The court declared that it was clear that the parties intended that the steam

engine, boiler, etc., should be restored to their original character as personal property, and held that as against those who had notice the severance was effective. In *Folsom v. Moore,* 19 Me. 252, the same principle was applied. There, according to the evidence, the owner of the real property at the time of its sale gave to the purchaser a deed, and at the same time sold as personal property a stove attached to the real property. The court, in holding that the stove was personal property, remarked: "It would be against every principle of justice to permit the plaintiff, after having sold it as personal, to turn round reclaim it, as part of his real estate." See also *Fortman v. Goepper,* 14 Ohio St. 558; Tiffany, Real Property (2nd Ed.), § 273; and 26 C. J., Fixtures, p. 676, § 39. This court has recognized that parties may agree that the annexation of a chattel to the land shall not deprive it of its character as personalty: *Blake-McFall Co. v. Wilson,* 98 Or. 626 (193 P. 902, 14 A. L. R. 1275); *Dippold v. Cathlamet Timber Co.,* 98 Or. 183 (193 P. 909); *Hershberger v. Johnson,* 37 Or. 109 (60 P. 838); *Landigan v. Mayer,* 32 Or. 245 (51 P. 649, 67 Am. St. Rep. 521); *Henkle v. Dillon,* 15 Or. 610 (17 P. 148). Likewise, this court has held that the interested parties may agree that an article already annexed to the soil shall be deemed personalty: *Blake-McFall Co. v. Wilson,* 98 Or. 626 (193 P. 902, 14 A. L. R. 1275); *Kennedy v. City of Hood River et al.,* 122 Or. 531 (259 P. 911); *First State & Savings Bank v. Oliver,* 101 Or. 42 (198 P. 920); *Lees v. Hobson,* 90 Or. 248 (176 P. 196). Such agreements are effective between the parties and those having notice.

◼ We now return to the three rulings of the trial judge which the defendants challenge. The defendants do not contend that the amendment which the trial

judge permitted the plaintiff to make to his complaint during the trial was not within the contemplation of § 1-906, Oregon Code 1930, but seem to believe that since the boiler, refrigerators and light fixtures were attached to the realty their status as parts of the realty could not be changed by the agreement of the parties. It is obvious from the decisions of this court above enumerated that their belief is a mistaken one. Before the amendment was allowed the bill of sale, dated June 3, 1927, from the defendants to M. W. Mattechek and his wife, which enumerated, among other articles conveyed, the heating plant, refrigerator system and electric fixtures, had already been received in evidence. When plaintiff's attorney asked for leave to make the amendment by inserting into his complaint by interlineation "1 heating plant", defendants' counsel indicated a belief that the complaint already contained the item by declaring, "You've got that, haven't you?" In other words, when the amendment was permitted, the record indicated that the owner of the realty had constructively severed the enumerated articles from the soil—if they were fixtures—by signing a bill of sale describing the articles just mentioned simultaneously with the execution of the deed to the realty. It is our belief that no error was committed when the amendment was allowed. It will be observed from the review of the pleadings set forth in a preceding paragraph that the answer repeatedly refers to the articles enumerated in the complaint as "personal property". When the answer was filed, the amendment just described had not yet taken place, but after it was allowed defendants did not seek to amend their answer. It is our belief that the pleadings admit that the questioned articles were personalty. That being true, there was no need for evidence upon the subject, but the

defendants presented no objection upon that score. No error is revealed by these exceptions.

The defendants next contend that the trial judge erred when he permitted witnesses to testify to the price paid by M. W. Mattechek for many of the articles which comprised the furnishings of the apartments, and that he also erred in instructing the jury as follows:

"The true measure of damages in cases of this nature is that sum which will be just compensation to the owner of personal property who has been deprived of its use and benefit. Ordinarily, the reasonable market value of the personal property at the time and place of the conversion meets the requirement of just compensation. When, however, this rule runs counter to the cardinal rule of just compensation it is not to be followed. Therefore, if you find from the evidence that said personal property did not have a market value at the time and place of the conversion, if any, herein, or at least a market value which is fairly indicative of its real value to plaintiff owner, if he was the owner, and of his loss, if any, by being deprived of it, then you will allow to plaintiff, as damages, such sum of money as you find from the evidence to be the actual value of the property to him, excluding, of course, any fanciful or sentimental value which he might place upon it. On the other hand, if you find that said personal property did have a market value at the time and place of the conversion, and that such market value meets the requirement of just compensation, you will apply that rule in assessing the damages . . . ."

Fourteen of the 16 apartments were furnished by M. W. Mattechek about the time he acquired ownership which, as we have seen, was in the early part of June, 1927. The alleged act of conversion occurred October 13, 1930. Over the objections of the defendants, M. W. Mattechek was permitted to testify to the amounts which, according to his recollection, he had paid for the

furnishings. In overruling the objections, the trial judge stated:

"The cost would not be proof of the value at the time of conversion, but it is a part of the matter that the jury can take into consideration. . . . It has been my understanding that they could show the cost of it merely for the jury to consider in estimating the value at the time of the alleged conversion."

After the witness had given his recollection of the cost price of the davenports, matresses, etc., he next undertook to state their value on October 13, 1930, the time of the alleged conversion. In each instance he was first asked: "What were they worth on the 13th day of October, 1930?" One of his replies, which is representative of the others, was, "Allowing for 25 per cent depreciation, they were worth . . . ." In each instance he found the value at the time of the alleged conversion by deducting from the cost price 25 per cent. He did not claim that the result revealed market value. In fact, the furniture dealer who sold to M. W. Mattechek the furnishings for this apartment house swore that between the sale and the day of the trial furniture prices had declined 33 1/3 per cent. Hence, Mattechek's estimate of the "value" of this used furniture was higher than the market price of new furniture. But the plaintiff seeks to sustain the challenged rulings on the theory that he is entitled to recover not market value but personal value.

Neither the plaintiff nor his parents who gave him a bill of sale to the contents of the apartment house, dated May 12, 1930, ever lived in the structure or used any of the furniture in their households. At the time of the alleged conversion the furnishings were more than three years old, showed the effects of wear and some of the chairs were broken. The articles which

M. W. Mattechek placed in the apartment house were ordinary pieces and were purchased in a furniture store in Salem. There is no evidence that furniture of this kind lacked a market value in October, 1930, when the defendants took possession; but, to the contrary, the record indicates that Salem affords a market for used furniture. Certainly there is no proof that the articles could not have found a ready market in Portland, 52 miles distant. It is true, as the plaintiff contends, that when the furnishings of one's home or one's personal apparel have been taken by a wrongdoer, the owner is not required to accept as compensation the second-hand value of the items. He does not buy such articles in second-hand stores, nor does he select those which are not peculiarly adapted to his individual needs. Market value is dependent, in part, upon style and fashion, and since personal articles are acquired for use and not for sale, market value might fail to compensate adequately for their loss. Therefore, the authorities hold that their owner may recover as damages the actual value to him of those items, excluding, however, fanciful considerations: *Barber v. Motor Investment Co.*, 136 Or. 361 (298 P. 216); McCormick on Damages, p. 170; 26 R. C. L., Trover, p. 1149, § 64. But these davenports, rugs, chairs, etc., were no part of the furnishings of the plaintiff's home. They were not selected because they were peculiarly suited to his taste and adapted to the use of himself and family. They were no part of his domestic establishment. It is doubtful whether he ever saw any of the furniture. The apartment house was a business venture, and the furnishings were valuable to its owner only because they served the needs of his tenants. Such being true, the measure of damage was market value, not owner value. The trial judge, therefore, erred when he instructed the

jury that they could award to the plaintiff something other than market value. Moreover, the instruction authorized the jury to determine whether there existed a market value for the furniture. Since the evidence fails to show an absence of such a value, this portion of the instruction is erroneous: *Iler v. Baker*, 82 Mich. 226 (46 N. W. 377). As already indicated, there was no proof that the articles could not have found a ready market in Portland, and if the testimony is susceptible of a construction that there existed no market for the furnishings in Salem, which we do not believe, the Portland market price, plus the cost of transportation, would be the measure of damage: *Hodson v. Goodale*, 22 Or. 68 (29 P. 70); *Bump v. Cooper*, 20 Or. 527 (26 P. 848); Sedgwick on Damages (9th Ed.), § 246; 22 C. J., Evidence, p. 189, § 153.

■ The price paid for personal property, unless the purchase was remote, frequently indicates quality, kind or present value. That being true, evidence of price paid is admissible when it sheds light upon present value. The decisions frequently state that in its reception or its exclusion the trial judge should exercise sound discretion: *Dakin v. Queen City Fire Insurance Co.*, 59 Or. 269, 117 P. 419; McCormick on Damages, p. 176; 22 C. J., Evidence, p. 184, § 140. See also *Wutke v. Yolton* (Tex.), 71 S. W. (2d) 549 (hotel furniture); *Rutherford v. James*, 33 N. M. 440 (270 P. 794, 63 A. L. R. 237); *Devinne Hallenbeck Co. v. Autotyre Co.*, 113 Conn. 97 (154 Atl. 170); *Bailey v. Ford*, 151 Md. 664 (135 Atl. 835); *Whitcomb v. Automobile Insurance Co.*, 167 Minn. 362 (209 N. W. 27). The court did not err when the evidence of original cost was received.

■ The next assignment of error is based upon rulings which received in evidence (1) a deed from defendant P. J. Pugh to his wife, defendant Grace E. Pugh,

covering the real property occupied by the apartment house; (2) a deed from P. J. Pugh to his wife, covering another parcel of property; (3) a deed from both defendants to Joan Pugh; (4) a deed from the latter to defendant Grace E. Pugh; (5) a deed from the sheriff of Marion county covering the apartment house property; and (6) a bill of sale from defendant P. J. Pugh to his wife, transferring the contents of the apartment house. All of these instruments, except one, were executed after the plaintiff had presented his claim. It was presented against defendant P. J. Pugh only. Plaintiff argues that these conveyances and transfers were admissible for the purpose of showing a guilty conscience and a recognition of liability upon the part of the transferrors. They were received for that purpose. We do not believe that the court erred when it made these rulings: *Heneky v. Smith,* 10 Or. 349 (45 Am. Rep. 143); *Parker v. Monteith,* 7 Or. 277; *Harmon v. Haas,* 61 N. D. 772 (241 N. W. 70, 80 A. L. R. 1131) (annotated); *State v. Anderson,* 58 N. D. 721 (227 N. W. 220, 65 A. L. R. 1305) (annotated); Wigmore on Evidence (2d Ed.), § 282; and Jones' Commentaries on Evidence, § 1040.

Next, the defendants contend that the trial judge erred when he refused to permit them to inquire of M. W. Mattechek whether a deed executed and delivered by the Washington Hardware & Furniture Company to the plaintiff was a gift. This deed covered the apartment house property. The defendants, as already stated, conveyed the apartment house property to M. W. Mattechek and his wife when they sold to those two persons some of the furnishings. Later, according to Mattechek, he and his wife conveyed the real property to the above-named corporation, which he controlled and of which he was president. He produced a deed, dated

May 12, 1930, executed by the hardware company which conveyed this real property to the plaintiff. The defendants contend that the bill of sale from plaintiff's parents to him, dated May 12, 1930, was signed and delivered for the purpose of defrauding the parents' creditors. The reply admits the bill of sale was "a gift". The pleadings present no issue concerning the real property. Although we have read and studied with care the pleadings and evidence in this case, we have been unable to discover any reason for the reception in evidence of the challenged deed. Defendants objected to its admission. Apparently, plaintiff's counsel know of no purpose served by this deed in this action, for their brief, referring to it, states: "The deed in question was not in any way related to the transfer of the personal property in question. The deed was not involved in this action, and it was not a proper subject of inquiry." Yet the deed and other matters unrelated to the issue of conversion made their way into the record. For instance, it developed that when the defendants sold to the Mattecheks the apartment house and the furnishings (which were then in it) they received a second mortgage which they later foreclosed, and thus again acquired ownership. By itself, the above irrelevant deed might be nonprejudicial, but, in view of other irrelevant facts, it appears to us that the jury may have felt at liberty to review the propriety and morality of defendants' conduct in foreclosing their mortgage. The deed was irrelevant, but, having been received, the defendants should have been permitted to inquire concerning its consideration, for apparently it was a part of the transaction whereby the Mattecheks, on May 12, 1930, engaged in the alleged fraudulent transfer: 27 C. J., Fraudulent Conveyances, p. 807, § 739.

■ Defendants' next assignment of error is predicated upon rulings which permitted M. W. Mattechek to describe, over defendants' objections, the efforts which he and the plaintiff had made in April, 1930, to obtain a loan of $32,500 or thereabouts upon the security of the apartment house property. Evidence received prior to that juncture showed that the real property was encumbered with a first mortgage of $30,000, and a second mortgage held by the defendants in the denomination of $5,200. Also, over objection, the witness was permitted to testify that he and his son sought the new loan so that they could "refinance the property, pay Mr. Pugh's second mortgage and save the property for ourselves, if possible". As a part of this chapter a loan application, bearing the witness' signature, was received in evidence, and considerable effort was spent in tracing the course of a purported second application. Again, we state that the pleadings do not mention the real property. They present no issue concerning it or defendants' second real estate mortgage; yet considerable time was spent, not only with the contentions concerning the supposed second mortgage application but also with the title of the real property after it left the defendants and until it reached the plaintiff. The plaintiff, in his efforts to prove that he had made more than one application for a mortgage loan, went the length of calling one of defendants' attorneys to the witness stand and asking him whether he possessed the missing mortgage application. We can not understand how the fate of the Mattecheks' interest in the real property and their application for a real estate loan has any relevancy to the issues concerning the personal property. We are clearly satisfied that the trial judge erred when he permitted the plaintiff to make these inquiries.

■ The last assignments of error which we shall consider are based upon the orders which overruled the defendants' motions for directed verdicts. Defendants claim that our Bulk Sales statute (§§ 64-101 to 64-104, Oregon Code 1930) was applicable to the transaction when M. W. Mattechek gave to the plaintiff the bill of sale dated May 12, 1930, and that the transaction was voidable because the parties did not conform to the procedure required by the statute. Section 64-101 renders the act applicable to transfers of "any goods, wares or merchandise in bulk, or all or substantially all of the fixtures or equipment used, or to be used, in the sale, display, manufacture, care or delivery of said goods, wares or merchandise, including movable store and office fixtures, horses, wagons, auto trucks and other vehicles." Section 64-104 provides:

"Any sale or transfer of goods, wares or merchandise, or all or substantially all of the fixtures or equipment used, or to be used in the sale, display, manufacture, care or delivery of said goods, wares, or merchandise, including movable store or office fixtures, wagons, auto trucks and other vehicles, out of the usual or ordinary course of the business or trade of the vendor, or whenever thereby substantially the entire business or trade theretofore conducted by the vendor shall be sold or conveyed or attempted to be sold or conveyed to one or more persons shall be deemed a sale or transfer in bulk  *  *  *."

It is, of course, evident that this apartment house was not engaged in the manufacture or sale of merchandise. Defendants, however, contend that our decisions have applied the act beyond business engaged in the "sale, display, manufacture, care or delivery" of goods, wares and merchandise. They cite *Syverson v. Serry*, 101 Or. 514 (200 P. 921), where a sawmill was the subject matter of the transaction, and *Benson v.*

*Johnson,* 85 Or. 677 (165 P. 1001, 167 P. 1014), where "The Roseburg Garage" was the subject matter. A sawmill, however, is engaged in the manufacture of merchandise and frequently operates a retail yard. A garage not infrequently is engaged in the sale of tires, gasoline, automobile parts and accessories. We know of no decision which has applied a Bulk Sales statute to the transfer of an apartment house. The words "whenever thereby substantially the entire business or trade theretofore conducted by the vendor shall be sold or conveyed" found in § 64-104 must be deemed to have reference to the kinds of business defined in other parts of the statute; that is, to businesses engaged "in the sale, display, manufacture, care or delivery" of goods, wares and merchandise. We believe that the Bulk Sales statute was not applicable to the challenged transfer: *Meier Electric & Machine Co. v. Dixon,* 81 Ind. App. 400 (143 N. E. 363), and *Swift & Co. v. Tempelos,* 178 N. C. 487 (101 S. E. 8, 7 A. L. R. 1581).

Next, defendants argue in support of this assignment of error that plaintiff can not succeed because he made no demand for possession upon the defendant Grace E. Pugh before instituting this action. A demand is unnecessary if the alleged wrongdoer's act amounts to a conversion regardless of whether a demand is made or not. In the present instance, if plaintiff's bill of sale was valid, defendants were wrongfully in possession. In our opinion, no demand was necessary.

Next, defendants argue that the evidence conclusively proves that the bill of sale of May 12, 1930, was a fraudulent conveyance, and that, therefore, their motions should have been sustained. We have carefully considered the evidence, but do not believe that this contention can be sustained.

We deem it unnecessary to express an opinion upon other contentions argued in the brief.

The judgment of the circuit court will be reversed.

Reversed and remanded.

CAMPBELL, C. J., and KELLY and BELT, JJ., concur.