Argued September 10, 1973, reversed in part, affirmed in part,
remanded August 8, 1974

# LILENQUIST, *Appellant, v.* PITCHFORD'S, INC. ET AL, *Respondents.*

### 525 P2d 93

*Robert Schimanski,* Spokane, Washington, argued the cause for appellant. With him on the briefs were Bailey, Hoffman, Morris & Van Rysselberghe, Eugene.

*Wm. G. Wheatley,* of Jaqua & Wheatley, Eugene, argued the cause and filed a brief for respondents.

McALLISTER, J.

This is a dispute over the ownership and the right to remove various buildings built under leases and subleases on a tract of commercial property in Eugene.

Plaintiff Jean Lilenquist and defendant Pitchford's, Inc., are both successors in interest to prior lessees, but, for brevity's sake, we will refer to them as if they had been the lessees throughout the entire period here involved. The owner of the real property is not a party to this dispute.

In 1944 Standard Oil Co. leased the tract from the owner and immediately subleased it to Lilenquist. On September 1, 1947, Standard terminated its lease as to a portion of the leased premises, referred to in the record as Parcel B, and on October 1, 1947, the owner leased Parcel B directly to Lilenquist so that thereafter Lilenquist held Parcel A under a sublease from Standard Oil and Parcel B under a lease directly from the owner.

In 1948 Lilenquist subleased both parcels to Pitchford's. Through the exercise of options to renew,

both the leases to Lilenquist and her sublease to Pitchford's were renewed from time to time and continued until January 31, 1969. This dispute arose when, on termination of all the leases, both parties claimed ownership and the right to remove the buildings built on the land over the years.

We must first determine the nature of this proceeding, which, in turn, determines our scope of review. Plaintiff initiated it as a declaratory judgment proceeding and classified it, both in this court and the court below, as a suit in equity. In the trial court defendant argued that this proceeding was in the nature of an action at law, but did not raise that issue in this court. The trial court treated the proceeding as a suit in equity and terminated it with a decree. We think it is clearly in the nature of an action at law and must be so treated.

■ Whether a declaratory judgment proceeding is to be treated as a suit in equity or an action at law depends on the essential nature of the proceeding, which, in turn, is normally determined by the nature of the relief sought by the parties. *Oregon Farm Bureau v. Thompson,* 235 Or 162, 199, 200-205, 378 P2d 563, 384 P2d 182 (1963) (concurring and dissenting opinions on rehearing representing the views of five members of the court on this question); *Mayer v. First National Bk. of Oregon,* 260 Or 119, 133, 489 P2d 385 (1971); *May v. Chicago Insurance Co.,* 260 Or 285, 291, 490 P2d 150 (1971); *Frontier Ins. v. Hartford Fire Ins.,* 262 Or 470, 478, 499 P2d 1302 (1972); *Lee v. State Farm Auto. Ins.,* 265 Or 1, 507 P2d 6 (1973).

■■ While buildings are usually considered part of the realty to which they are attached, parties to a lease may agree that they shall retain their character as personal property. *Mattechek v. Pugh,* 153 Or 1,

6-7, 55 P2d 730, 168 ALR 725 (1936) ; *Gen. Petroleum Corp. v. Schefter,* 141 Or 349, 352, 16 P2d 645 (1933). By virtue of various lease provisions providing for removal of buildings the parties here and the landowner did so agree. In such a case the right of removal, if contested, is usually settled in an action in replevin or conversion. *Wheeler v. McFerron,* 33 Or 22, 24, 52 P 993 (1898) ; *Kennedy v. City of Hood River et al.,* 122 Or 531, 259 P 911 (1927) ; *Mattechek v. Pugh,* supra; *Gen. Petroleum Corp. v. Schefter,* supra.

■ The relief prayed for by the plaintiff in this case is the same relief which she could have obtained by an action in replevin, i.e., the right to remove certain buildings from the premises. Since this proceeding is essentially legal in nature we do not review the case de novo, but as an action at law. This means that any factual findings in the trial court are binding on us if they are supported by substantial evidence. However, since most of the issues presented will be decided as a matter of law the precise scope of our review in this case may not be important. See *Lee v. State Farm Auto. Ins.,* supra.

This case has been complicated because both parties claimed all buildings on both parcels without regard to when, by whom, or under what lease provision, they were built. In order to decide the legal questions involved, it is necessary to separate the buildings into several categories, which we shall do.

We deal first with the main building known as the shop building. Standard Oil's 1944 lease from the landowner gave Standard the right to remove any buildings and equipment placed by it on the premises

during its leased term. The sublease from Standard to Lilenquist provided:

"NOW, THEREFORE, in consideration of, the mutual covenants herein contained it is agreed between the parties hereto as follows:

"As soon as the Lessee is able to secure the necessary materials and equipment and the required permits or authorization from the Governmental authorities having control over the same, Lessee agrees to construct on the demised premises at Lessee's sole cost and expense a building 40' x 50' for truck services, described as Portion 'B' on the sketch attached hereto as Exhibit 1 and made a part hereof. Said building shall be erected at the location shown on Exhibit 1 and shall cost completed not less than Five Thousand Dollars ($5,000.00). Said building shall be built of steel or other fireproof material, shall be constructed in a good workmanlike manner and shall conform in all respects to the Building Code of the City of Eugene, Oregon.

"Lessee shall have the right at their sole cost and expense to construct other buildings and improvements on the demised premises provided the location, type, specifications and cost thereof are approved by the Lessor in advance of any construction. All such additional buildings or improvements constructed or placed upon the demised premises by the Lessee may be removed by the Lessee at Lessee's own cost upon the expiration or sooner termination of said sublease, provided that Lessee repairs and restores all damage done to the premises and the other buildings located thereon resulting from such removal."

■■ The parties apparently agree that the shop building was built by Lilenquist pursuant to the first paragraph of the Standard-Lilenquist lease quoted above. That paragraph obligated Lilenquist to build the 40 x 50 building but did not grant her any right to remove the building. The right to remove buildings

was granted Lilenquist by the second paragraph quoted above, but was limited to "other buildings and improvements", which clearly means buildings other than the specific building described in the first paragraph.

Under the above lease provisions we hold that the shop belonged to Standard, that title to the shop passed to the owner when Standard abandoned the shop by failure to remove when it terminated its lease to Parcel B in 1947. In 1970 the owner assigned to Pitchford's any interest it had in the buildings on the premises. Pitchford's thereby acquired the right to remove the shop building and that part of the trial court's judgment declaring that Pitchford's owned the shop is affirmed.

We turn to the next class of buildings, which is comprised of a carport and a parts building. Some time before Lilenquist subleased the premises to Pitchford's she built a carport extending between the shop and the office, but attached to neither. She also built a building described in the Lilenquist-Pitchford's sublease as "the structure located on Parcel 'A' containing the present parts department".

■■ In order to recover property in a replevin proceeding the plaintiff must identify the property claimed with reasonable certainty. *Farmers' Loan and Mtg. Co. v. Hansen,* 123 Or 72, 75, 260 P 999 (1927); *Guille v. Wong Fook,* 13 Or 577, 584, 11 P 277 (1886). Plaintiff has failed to carry her burden of proof as to these two buildings. There is no doubt that when the 1948 sublease to Pitchford's was executed, the carport existed as a separate improvement and there is evidence that there was a building in some form that housed Lilenquist's parts department. There is no evidence, however, that either the carport or the parts building still

existed in an identifiable form when the plaintiff filed this proceeding or at the time of trial. On the contrary, what evidence there is indicates that both of these buildings have been so thoroughly incorporated into the expanded shop building that they no longer exist in any separate identifiable form.

Because plaintiff failed to prove that the carport and parts building still existed as separate identifiable articles of property, we affirm that part of the trial court judgment as it pertained to these buildings.

■ This holding could be rested on the alternative ground that there is no evidence that either the carport or the parts building could be removed without material injury to those buildings or to the realty. The record supports only an inference that any attempt to remove what remains of these buildings would substantially destroy the shop and create a pile of rubble in lieu of the two former buildings.

In *Henkle v. Dillon,* 15 Or 610, 614-615, 17 P 148 (1888), we said:

"* * * So when things personal in their character are about to be annexed to the realty, and before such annexation the parties by express agreement provide that such chattels shall retain their character as personalty, or retain their character as chattels, although attached to the realty in such manner that without such agreement they would lose that character, they will continue to be chattels, *if they can be removed without material injury to the articles themselves, or to the freehold.* The agreement will govern, *if the article is so attached that it can be removed without material injury to it or to the realty,* or if from the circumstances attending, it is evident or may be presumed that such was the intention of the parties; and in every such case the thing which would otherwise have become a fixture

retains its personal character. * * *" (Emphasis added.)

*Accord, Martin v. McCaige,* 261 Or 99, 109-110, 492 P2d 770 (1972); *Blake-McFall Co. v. Wilson,* 98 Or 626, 642, 193 P 902, 14 ALR 1275 (1921); *Hershberger v. Johnson,* 37 Or 109, 110-111, 60 P 838 (1900); *Landigan v. Mayer,* 32 Or 245, 250, 51 P 649 (1898); V American Law of Property 33 (1952) § 19.8.[1]

 The remaining building built by Lilenquist prior to the 1948 sublease to Pitchford's is an office building. We cannot tell whether this building was built by Lilenquist under her sublease from Standard or under her subsequent lease of Parcel B directly from the owner. As pointed out above, the Standard sublease gave Lilenquist the right to remove all buildings placed on the property by her except the shop building. The building was not removed when her sublease with Standard was terminated, but this did not cause Lilenquist to lose her removal rights. Under a provision in her subsequent lease from the landowner,[2] Lilenquist's

---

[1] "There are a few settled principles, however. First, regardless of who is in possession, or who effects the merger, an owner of personalty loses his right to reclaim his property when it is so incorporated into the realty that he can no longer identify it—as where his bricks are built into a building or his cement is used in a concrete foundation. His only claim, if any, is for value. Secondly, even where the former owner can identify his property, if its recovery would involve shocking loss or destruction, such as the pulling down of a building, or reducing it to mere raw materials, he may not reclaim his specific property. There is a limit beyond which a court will not give title a right of way."

[2] "It is further understood that the second parties [Lilenquist], under a sublease from the Standard Oil Company, have erected certain buildings and structures upon Parcel 'B' and may erect other and further structures thereon, and the second parties hereby grant and transfer to the first parties, upon mortgage, all of the improvements which they place upon Parcel 'B', which improvements shall be deemed security for the payment of the rentals

removal rights were expressly recognized, although the language is ambiguous as to whether it includes already existing improvements as well as improvements subsequently constructed. However, a new lease is presumed to continue the tenant's existing removal rights acquired under a previous lease unless the language or the circumstances of its execution show an intent on the part of the lessee to abandon, *Blake-McFall Co. v. Wilson,* supra, 98 Or at 647. Thus, if the office building was constructed prior to Lilenquist's lease from the owner, her removal right under her lease with Standard carried over under her new lease with the owner.

If the office building was instead built during the lease from the owner, that lease granted Lilenquist the express right to remove the office building "at the termination of the lease". Therefore, regardless of whether the office building was built under the sublease from Standard or the lease from the owner, Lilenquist had the right to remove it at the end of the lease term. Lilenquist clearly carried her burden of showing that the office building is a separate identifiable structure. While Pitchford's has repaired and remodeled the interior and exterior of the building over the years, the comparison of two exhibits, a picture showing the building at the start of Pitchford's sublease and one taken shortly before trial, shows that the office building now is easily identifiable as the building erected by Lilenquist.

We find as a matter of law that there is no evidence tending to prove Pitchford's affirmative defense that it had exercised an option granted in its sub-

---

under this lease and which improvements may be removed by the second parties at the termination of the lease, providing that the lease is not in default and all rentals paid."

lease to purchase all the buildings and improvements in which Lilenquist had an interest. The clearest evidence that the option was not exercised is Mr. Pitchford's own testimony. When asked what he had paid Lilenquist for the improvements, he stated that he did not pay anything "because there was no improvements to buy". Since the option required Pitchford's to pay Lilenquist an agreed upon purchase price for the improvements we think this testimony disposes of the claim concerning the option.

Pitchford's sublease from Lilenquist gave it the right to remove any improvements or additional structures which it added to the premises upon the expiration of its leasehold interest and provided that failure to remove within 60 days would cause all Pitchford's interest in the improvements to revert to Lilenquist. Lilenquist contends that Pitchford's had lost its removal rights by failing to remove the buildings within 60 days after the January 31, 1969, sublease termination.

 Courts differ on the issue of when a tenant must or may exercise his right to remove improvements which he has placed on the leasehold. Annotation 6 ALR2d 322 (1949). But there is no question that he may abandon or waive this right. If a tenant's term ends and he vacates the leasehold leaving the improvements on the property, he generally is deemed to have waived his removal rights and abandoned the improvements. *Blake-McFall Co. v. Wilson,* supra, 98 Or at 645-646; *Glaser v. North's et al.,* 201 Or 118, 123, 266 P2d 680 (1954); *Francis v. Schallberger,* 137 Or 529, 538, 3 P2d 530, 83 ALR 108 (1931); 6 ALR2d 322, supra. If a tenant rightfully remains in possession after termination of the lease the better reasoned cases

hold that since the tenant obviously has not abandoned his improvements, he has retained his right to remove them. *Blake-McFall Co. v. Wilson,* supra; V American Law of Property 45 (1952) § 19.11 (citing *Blake-McFall Co. v. Wilson,* supra); *cf. Kennedy v. City of Hood River et al.,* supra, 122 Or at 538.

■ Applying the above rule, Pitchford's has retained its right to remove improvements placed on the leasehold by it, since it has remained legally in possession of the property and obviously has not abandoned its interest. In *Blake-McFall Co. v. Wilson,* supra, 98 Or at 645-648, we pointed out the absurdity of a rule that would require a tenant to remove his fixtures at the end of his old lease, carry them around the block, and replace them on the leasehold under the new lease. We hold that since Pitchford's new lease from the landowner did not extinguish its existing removal rights and it has not abandoned those rights it continues to possess them. The trial court's judgment in this respect is affirmed.

■ Pitchford's contends that Lilenquist has lost her right to remove buildings erected by failing to remove them at the termination of her lease from the landowner. We find, however, that Lilenquist did not lose her removal rights to the office building by failing to remove that building. When this dispute over ownership arose shortly before the January 31, 1969, termination date, Pitchford's attorney wrote to Lilenquist that, while nothing would be done to prevent her from exercising any removal rights she possessed, "Pitchford's, Inc. will look to you for the recovery of any damages caused" to its interest in the property. Lilenquist testified that when she visited the property on the termination date Pitchford's and its employees

were still occupying the premises. She then chose to settle the dispute judicially in this lawsuit rather than risk injury to persons or to property that might turn out not to be hers. We hold that Lilenquist did not forfeit or abandon her removal rights by choosing to pursue her claim in court. *State Hwy. Comm. v. Demarest,* 263 Or 590, 606, 503 P2d 682 (1972); 6 ALR2d supra at 351, § 17.

■ With regard to the relief to which plaintiff is entitled, ORS 18.110 provides that: "In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession, or the value thereof, in case a delivery cannot be had, and damages for the detention thereof. * * *" In her complaint plaintiff did not allege the value of the office building or of any of the other buildings and did not allege that she had been damaged by the detention of the office building. Neither did plaintiff offer any evidence of the value of the office building or any evidence that she had been damaged by the detention thereof.[9] Upon oral argument in this court plaintiff reaffirmed her position that she asked only for a declaration of her right to remove all the buildings on the property.

Under the foregoing circumstances, the only relief to which plaintiff is entitled is a judgment providing that she has the right to remove the office building from the leased premises within a reasonable time from the entry of the judgment without an alterna-

---

[9] In her complaint plaintiff alleged that she had been damaged in the sum of $700 per month "which would be a reasonable rental for said facilities belonging to the Plaintiff." However, plaintiff did not attempt to prove the extent of her damage, if any, resulting from the detention by Pitchford's of the office building.

tive judgment for the value of the building if a delivery thereof cannot be had and without damages for the detention thereof.

The case is remanded for the entry of a judgment consistent herewith.